# John D. McIntire

*v.*

# John C. Yates *et al.*

*Filed at Ottawa September 27, 1882.*

1. Assignment—*assignee of note, in equity takes subject to all defences.* An assignee of a note secured by mortgage takes the same, in equity, subject to all the defences existing between the mortgagor and mortgagee.

2. Same—*when maker of note is estopped from questioning its validity, as against purchaser.* Where a party executes notes, and a mortgage securing them, and delivers them to the payee therein named, to be by him sold upon the market to raise money to be used for a certain purpose, a sale of such notes by the payee in the market must be held to be a sale by the consent and authority of the maker, through his agent, and the maker is estopped from calling in question the validity of the notes and mortgage, even though the payee does not use the money received therefor for the purpose intended.

3. In such case a party purchasing the notes and mortgage in the due course of business, can not be held responsible in any manner for the subsequent conduct of the payee, or the use he may make of the money derived from the sale of the notes. It is enough, so far as such purchaser is concerned, that the payee had authority from the maker to sell them.

4. Mortgage—*given to one person to secure debt due another, is valid.* A member of a firm who is liable to creditors of the firm, may secure such indebtedness by giving his note, secured by mortgage, to a third person, as a trustee or agent of such creditors, and the indebtedness for which he is liable will be a sufficient consideration to uphold the transaction. In such case it is wholly immaterial whether he owes the agent to whom the note and mortgage run, and parol evidence may be given to show the indebtedness and who are the parties secured by the transaction.

5. Consideration—*note to secure preëxisting indebtedness.* A preëxisting indebtedness is a good and valid consideration for a note and mortgage given to secure the same, even as against creditors of the party giving such security.

6. Partnership—*rights of partnership and of individual creditors.* Partnership creditors have no claim on the fund arising from the separate estate of an individual partner until the individual debts are satisfied, and, on the other hand, separate creditors can only seek payment out of the surplus of the partnership assets after the satisfaction of the partnership liabilities.

7. Same—*right to have partnership debts paid out of partnership assets, is in partner, not in creditors.* The right to have joint creditors seek payment out of the partnership effects to the exclusion of the separate cred-

itors of the members of the firm, is a right for the benefit and protection of the partners, or their representatives, and not for the benefit of the creditors. Therefore a creditor of one partner can not invoke the aid of a court of equity to prevent the partnership creditors from collecting their debts from his individual property until his individual creditors have been paid. And such debtor partner can not enforce this equitable right against mortgages given by him on his individual property.

8. MARSHALING ASSETS—*whether it should be ordered by the court.* An original bill was brought to foreclose a mortgage given by a member of a firm to secure partnership indebtedness. To this bill certain other parties filed a cross-bill to foreclose a deed of trust given by the same party to secure his individual notes, and another also filed a cross-bill to foreclose a mortgage the same party gave him after the execution and recording of the other mortgages: *Held,* that as the main object of the suit was to foreclose three distinct mortgages, it was not a case in which a court of equity was called upon to marshal the assets of a firm and an individual member of the firm, and determine the manner in which the assets should be distributed.

9. ERROR—*who may complain.* It was objected to a decree foreclosing three mortgages executed by a husband, his wife joining in one of them, that the wife had a dower right in a portion of the mortgaged premises, and "a resulting trust in the fee thereof," which should have been established and protected. The wife was not a party to the proceedings to foreclose either of the mortgages: *Held,* that her interest in the premises was not affected by the decree, and that there was no error in not finding her interest therein.

10. DECREE—*binds only party to suit.* The wife of a mortgagor who is not made a party to a bill to foreclose the mortgage, will not be affected in any way by the decree rendered in the case. If she has any rights in the premises, she may at any time institute proceedings to establish them; and if she executed the mortgage, the holder thereof may foreclose the same against such title when she does assert her claim.

11. ATTORNEY'S FEE—*when allowed on foreclosure.* Where a mortgage contains a provision, that in case of foreclosure two per cent on the amount found due on the mortgage indebtedness shall be allowed and included in the decree as a solicitor's fee, there will be no error in including such a fee in the decree.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of Peoria county; the Hon. JOHN BURNS, Judge, presiding.

The firm of Neill, McGrew & Co., of Peoria, being indebted in a large amount to the Mechanics' National Bank of Peoria,

and to Kingman, Blossom & Co., T. J. McGrew, a partner in the firm of Neill, McGrew & Co., to secure the same, executed to one Yates his note for $75,000, and at the same time a mortgage on his lands to secure its payment. It was stated in this note that it was "to include and secure only the legal and valid indebtedness of Neill, McGrew & Co. to the Mechanics' National Bank of Peoria, and to Kingman, Blossom & Co., of Peoria,—any and all amounts realized herein to be divided and paid to said two banks in proportion to the amounts that said Neill, McGrew & Co. are now lawfully indebted to said banks." There was no pretense that McGrew owed this sum, or any other amount, to Yates, but the proof was that the latter was a mere trustee for the two banks, and that the security was taken for their benefit alone.

McGrew, on June 18, 1879, executed his deed of trust on the same lands to J. S. Lee, to secure the payment of two notes, of $10,000 each, due in one and two years, with ten per cent interest, payable to T. Neill, a member of the firm of Neill, McGrew & Co. These notes were given to Neill, to be negotiated by him to raise money to enable Neill to purchase for the firm certain property in the city of Peoria, from one James B. Hogue. Neill negotiated these notes before their maturity, and received the money on their discount, but failed to use it in the purchase of the Hogue interest, as was intended he should. The Second National Bank and Alice Kilduff became the holders of these notes before their maturity, in the due course of business. After the execution and recording of the mortgage and deed of trust above mentioned, McGrew executed and delivered to McIntire another mortgage on the lands, or part thereof, to secure an individual debt due from him to McIntire.

The original bill was brought to foreclose the mortgage given by McGrew to Yates to secure the firm's indebtedness to the two banks, making McGrew, Lee, McIntire and others

defendants.    Alice Kilduff and the Second National Bank filed a cross-bill, seeking to foreclose the deed of trust given to Lee.    The answers to this cross-bill set up a failure of consideration—in this, that the notes therein secured were given to Neill to purchase the Hogue interest, which he failed to do, but appropriated the money to his own use.    McIntire also filed a cross-bill, to foreclose the mortgage from McGrew to him, in which, and also by his answer to the original bill, he claimed a priority of lien, on the ground that his claim was for an individual indebtedness of McGrew to him, for which the individual property of the debtor was first liable, in equity, and that such property was liable for firm debts only after payment of the individual debts.    The wife of McGrew was not made a party to any of the bills, and she never executed any of the mortgages, except the one to McIntire.

On the hearing, the court, after a finding as to the state of the various matters of indebtedness, decreed that the mortgage from McGrew to Yates was a first and valid lien on all the lands described, except the tracts embraced in the Lee trust deed, and a certain forty acres set off to McGrew as his homestead.    The decree then proceeded to direct payment to the various creditors, as their rights were found to be, and in case of a failure to make payment, it was directed that the premises be sold, and distribution of the proceeds made, expressly excepting the dower right of the wife of McGrew from the operation of the decree.    Other facts in the case, and questions arising thereon, will be found in the opinion of the court.

Mr. B. S. PRETTYMAN, for the plaintiff in error:

An assignee of a note, in equity takes subject to all defences against the payee.    *Olds* v. *Cummings*, 31 Ill. 188; *Haskell* v. *Brown*, 65 id. 29; *Thompson* v. *Shoemaker*, 68 id. 256; *Bryan* v. *Vix*, 83 id. 14; *Chicago, Danville and Vincennes Ry.*

*Co.* v. *Lowenthal*, 93 id. 433; *Sergent* v. *Howe*, 21 id. 148; *Kleeman* v. *Frisby*, 63 id. 482.

A note and mortgage given without consideration can not be held valid as collateral security. *Walker* v. *Carlton*, 97 Ill. 583.

A party being indebted to one who executes his note to another for such indebtedness, without satisfying the original debt or account thereby, makes such note without consideration. *Conkling* v. *Vail*, 31 Ill. 166; *Fisher* v. *Meister*, 24 Mich. 447; 1 Jones on Mortgages, 615.

There was no consideration, and a voluntary trustee or usee can not enforce an executory trust. *Minturn* v. *Seymore*, 4 Johns. Ch. 499; *Clark* v. *Lott*, 11 Ill. 115.

A voluntary assignee or mortgagee, as to creditors, is not a *bona fide* purchaser, and if the debtor only in such deed intended to hinder and delay his creditors, the deed is void. *Gehre* v. *Meery*, 6 Minn. 305; *Bennett* v. *Ellison*, 23 id. 242.

Though one purpose of a mortgage is to secure a debt, if another is to deter other creditors, or delay them, it is void as to creditors. *Crowningshield* v. *Kitridge*, 7 Metc. 522; *Kimbal* v. *Thompson*, 4 Cush. 441; *Harris* v. *Sumner*, 2 Pick. 102; *Robinson* v. *Stewart*, 10 N. Y. 189; *Garland* v. *Rivers*, 4 Rand. 282; *Reed* v. *Noon*, 48 Ill. 324; *Merry* v. *Bostwick*, 13 id. 410; 3 Parsons on Contracts, 448; 1 Jones on Mortgages, 627.

Separate creditors as to separate property are preferred, in equity, and joint creditors are excluded from participation in individual assets until individual creditors are paid. Parsons on Partnership, 347, 393; *Union National Bank of Chicago* v. *Bank of Commerce*, 94 Ill. 271; *Ladd* v. *Griswold*, 4 Gilm. 37; *Reeves* v. *Ayers*, 38 Ill. 418; *Morrison* v. *Kuntz*, 15 id. 193; *Roney* v. *Nantz*, 54 id. 29; *Polman* v. *Graves*, 26 id. 405; *Adams* v. *Sturgis*, 55 id. 468.

The court erred in allowing two per cent on the sum due, as solicitor's fee. This was creating a fictitious debt, against which the other creditors should have been protected. *Soles* v. *Sheppard*, 99 Ill. 620.

Messrs. JAMES, JACK & MOORE, for the Second National Bank:

McGrew is estopped by the recitals in his deed of trust from setting up the defence he urges. *Parson* v. *Anderson*, 4 Edw. 17; *Scott* v. *Sadler*, 2 P. F. Smith, 211; *Schaffer* v. *Reilly*, 50 N. Y. 61; *Kellogg* v. *Ames*, 41 id. 259; *Wyncoop* v. *Corning*, 21 Ill. 570; *Stewart* v. *Metcalf*, 68 id. 109; *Meads* v. *Lousign*, Hopkins' Ch. 141.

In the States holding as in .the *Olds case*, courts of equity will not allow the consideration to be inquired into for the sake of declaring the mortgage void for want of consideration, but they will for the purpose of ascertaining what is due on it. *Farnam* v. *Barnett*, 21 N. J. Eq. 89; *Calkins* v. *Long*, 22 Barb. 98; *Parker* v. *Parmalee*, 20 Johns. 133; *Croft* v. *Bannister*, 9 Wis. 462; 1 Hilliard on Mortgages, 608.

If a note and mortgage are executed with the understanding they shall be assigned, the assent of the maker to the assignment will be presumed, and the *bona fide* holder protected. *Mellendy* v. *Keen*, 89 Ill. 395; *Stevens et al.* v. *Hay*, 61 id. 399.

The equities protected are only such as arise out of the note and mortgage transaction itself, and not such as arise between the parties out of collateral matters. *Colehour* v. *State Savings Institution*, 90 Ill. 152.

As to other distinctions made, where the rule in *Olds* v. *Cummings* is not applicable, see *Bush* v. *Lathrop*, 22 N. Y. 535; *McNeill* v. *Tenth National Bank*, 46 Ill. 325; *Moore* v. *Metropolitan National Bank*, 55 N. Y. 4. Also, see *Lesley* v. *Johnson*, 41 Barb. 360; *Scott* v. *Sadler*, 2 P. F. Smith, 211; *Schaffer* v. *Reilly*, 50 N. Y. 61; *Kellogg* v. *Ames*, 41 id. 259.

Messrs. PUTERBAUGH & PUTERBAUGH, and Mr. N. W. GREEN, for Yates and the other defendants in error:

The note and mortgage to Yates were executed at the same time, and are to be taken and considered as one instrument,

and are to be so construed. *Duncan* v. *Charles,* 4 Scam. 561;
*Bailey* v. *Cromwell,* 3 id. 71; *Harper* v. *Ely,* 56 Ill. 188.

The trust appears in the note. It shows Yates to be
trustee for the two banks. 1 Jones on Mortgages, sec. 612;
*Rood* v. *Winslow,* Walker's Ch. (Mich.) 340; *Root* v. *Bancroft,*
10 Metc. 44; *Tunison* v. *Chamblin,* 88 Ill. 378; Perry on
Trusts, sec. 83.

The preëxisting liability of McGrew for the firm indebted-
ness, was a sufficient consideration for his note and mortgage
given to secure the same. *Manning* v. *McClure,* 36 Ill. 490;
*Babcock* v. *Jordan,* 24 Ind. 19; 2 Story's Eq. Jur. 657, 658;
*Bagley* v. *Greenleaf,* 7 Wheat. 46.

Only judgment creditors can attack a fraudulent convey-
ance. A subsequent grantee or mortgagee can not. *Finley*
v. *McConnell,* 60 Ill. 259; *Fitzgerald* v. *Forrestal,* 48 id. 228;
*Moritz* v. *Hoffman,* 35 id. 553; *Newman* v. *Willitts,* 52 id. 98;
*Miller* v. *Davidson,* 3 Gilm. 518; *Greenway* v. *Thomas,* 14 Ill.
271.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

The first point relied upon to reverse the decree is, that
"it was error not to allow the defence of want of considera-
tion to the foreclosure of the trust deed, in the cross-bills of
Alice Kilduff and the Second National Bank." The trust
deed was given by T. J. McGrew to J. S. Lee, on the 18th
day of June, 1879, on certain property in Peoria county, to
secure the payment of two notes, for $10,000 each, payable
to T. Neill, due in one and two years, with ten per cent
interest. Neill negotiated a loan of $20,000 from the Second
National Bank, and assigned these notes and mortgage, in
due course of business, before the notes were due, to the bank,
as security for the loan. The law may be regarded as well
settled in this State, as held in *Olds* v. *Cummings,* 31 Ill. 189,
and subsequent cases, that an assignee of a mortgage takes
the same subject to the defences in equity existing between

the mortgagor and mortgagee.   But the question here is, whether, under the facts of this case, McGrew is in a position to rely upon this rule of law.   He claims that these notes and deed of trust were executed and delivered to Neill to be used in the purchase of an interest which James B. Hogue owned in certain property in the city of Peoria, and as the property was not purchased of Hogue by Neill, and the notes were not appropriated to that purpose, but were used for another and a different object, the consideration upon which the notes were executed has failed.   McGrew, however, in his evidence, in substance testified that Hogue was not to take the notes in the purchase; that there was no agreement or understanding that these notes and mortgage were to be turned over to Hogue, but the arrangement between McGrew and Neill was, that Neill was to sell the notes and mortgage in the market, and raise money, and use the money in the purchase of the Hogue property.   That this was the understanding, is apparent from the fact that Neill told McGrew, as he testified, that he (Neill) had an arrangement in the east by which he could get cheap money, and the notes and mortgage were executed and left with Neill, so that he could negotiate them at once, and without delay, as soon as he closed the proposed trade with Hogue.

Allowing, then, full credit to the evidence of McGrew, although he was not corroborated, and it was on his objection that Lee and Stephens, the only persons besides himself in the county who knew what the contract was, were excluded from testifying, the arrangement seems to have been that the notes were delivered to Neill to be negotiated on the market, and the money derived from a sale of the notes was to be used by Neill for a specified purpose.   Neill negotiated the notes, obtained the money, and used it for a different purpose.   Now, while Neill may have disregarded his duty and his contract in the use made of the proceeds of the notes and mortgage, still, that breach of duty or contract can not

be set up as a defence to a suit brought by the assignee of the notes and mortgage to foreclose the same. The notes and mortgage having been sold on the market by the consent and by the authority of McGrew, the mortgagor, he is estopped from calling in question their validity. Neill was, in effect, the agent of McGrew, clothed with authority to sell the notes and mortgage; and as the agent acted within the scope of his authority, McGrew, the principal, is bound by the act of the agent. The bank that purchased the notes and mortgage was in no manner responsible for the conduct of Neill in the use he should make of the money derived from a sale of the notes. It was enough that he had authority to sell the notes and mortgage. The bank had no concern whatever with the application which Neill should make of the money,—that was a matter entirely between McGrew and Neill, which could not in the least affect the validity of the notes and mortgage. We therefore hold, as the notes and mortgage were executed and delivered to Neill to be sold upon the market, the sale and transfer were made with the consent of McGrew, and having consented, he is concluded by the sale, and can not question the validity of the notes and mortgage in the hands of persons who purchased and paid for them in due course of business, in good faith.

It is next claimed that the court erred in holding that the mortgage given by McGrew to Yates was a prior lien on the mortgaged premises. Various objections have been urged against the validity of this mortgage. It is first said the mortgage is without consideration. It is not pretended by the complainants in the original bill that there was any consideration paid by Yates, the mortgagee, or that McGrew was in any manner indebted to him. The notes and the mortgage, which were executed at one and the same time, and are to be regarded as one contract, disclose upon their face the nature and character of the transaction. The firm of Neill, McGrew & Co. was indebted in a large amount to

the Mechanics' National Bank of Peoria, and also to King-man, Blossom & Co. In order to secure this indebtedness, McGrew, who was a partner in the firm, executed his note, payable to Yates, for $75,000, and at the same time executed a mortgage on his lands to secure the payment of the note. The note declares on its face that it is "to include and secure only the legal and valid indebtedness of Neill, McGrew & Co. to the Mechanics' National Bank of Peoria, and Kingman, Blossom & Co., of Peoria,—any and all amounts realized herein to be divided and paid to said two banks in proportion to the amounts that said Neill, McGrew & Co. are now lawfully indebted to said banks." Now, while the note was made payable to Yates, and the mortgage to secure the same given to him, yet the parol evidence, and also this declaration in the body of the note, show clearly that Yates was a mere trustee for the two creditors named in the note, and the security was taken for their benefit alone, and we are aware of no rule of law that was violated by the transaction assuming this form. The fact that McGrew owed nothing to Yates, and that no consideration moved from Yates to him, does not in the least impair the validity of the notes and mortgage. The consideration upon which the validity of the note and mortgage rests, is and was the indebtedness due from Neill, McGrew & Co. to the Mechanics' National Bank, and Kingman, Blossom & Co. If these parties had a valid, subsisting indebtedness against McGrew, no reason is perceived which would prevent them from securing such indebtedness by mortgage, and whether the mortgage should be taken directly to the parties themselves, or in the name of some one else, is more a matter of form than substance, which can not affect the rights of the parties, or impair the validity of the transaction.

But it is said the mortgage having been executed to secure a preëxisting debt, the consideration is not good as against creditors. In *Manning* v. *McClure,* 36 Ill. 490, it was held

that the indorsee of a promissory note before maturity, in payment of a preëxisting debt, was a holder for a valuable consideration. The same rule is declared in *Mix* v. *National Bank of Bloomington*, 91 Ill. 20. The same principle which controls in regard to the consideration in case a promissory note is indorsed before maturity for a preëxisting debt, will govern where a mortgage is given to secure a preëxisting debt. What may be regarded a good consideration in one case, is, by analogy, a valid consideration in the other case. *Work* v. *Brayton*, 5 Ind. 396.

It is also contended, that, in equity, partnership creditors are excluded from sharing in individual assets until the individual debts are first paid, and hence McIntire's mortgage, having been given to secure McGrew's individual indebtedness, is entitled to priority over complainants' mortgage, which was executed to secure partnership liabilities. There is no doubt in regard to the general rule in equity on this subject. Many years ago it was held by this court in *Ladd* v. *Griswold*, 4 Gilm. 25, "that partnership creditors have no claim in the fund arising from the separate estate until the individual debts are satisfied; and, on the other hand, separate creditors can only seek payment out of the surplus of the partnership assets after the satisfaction of partnership liabilities." The same rule has been declared in numerous cases since the decision in the case cited.

But while there is no dispute in regard to the general rule of law, the question is whether plaintiff in error, McIntire, can avail of the rule in this case. This is not a case in which a court of equity is called upon to marshal the assets of a firm and an individual member of the firm, and determine the manner in which the assets shall be distributed. The original bill was brought to foreclose a mortgage given by McGrew to Yates, on certain lands therein described. To this bill Alice Kilduff and the Second National Bank of Peoria filed a cross-bill to foreclose the deed of trust which had been given

by McGrew to Lee to secure $20,000.   McIntire, plaintiff in error, also filed a cross-bill to foreclose a mortgage McGrew had given him after the execution and recording of the other mortgages.   It will thus be seen that the main object of the suit was to foreclose three distinct mortgages—to enforce three distinct liens—and not to marshal assets.   It is true that McIntire undertakes to raise the question in his answer, and also in his cross-bill; but he is not the proper person, in his own name, to file a bill for that purpose.   McGrew, the partner whose property is sought to be taken and misappropriated, is the proper person to invoke the aid of the court. "Upon a dissolution of the partnership, each partner has a lien upon the partnership effects, as well for his indemnity as for his proportion of the surplus.   But creditors have no lien upon the partnership effects for their debts.   Their equity is the equity of the partners, operating to the payment of the partnership debts."   (3 Kent, 65.)   The same principle is announced in *Ladd* v. *Griswold, supra,* where it is said: "The right, in equity, of the joint creditors to seek payment out of the partnership effects, to the exclusion of the separate creditors of deceased or insolvent partners, results solely from the right of the partners, or their representatives, to have the joint estate thus applied.   The rule is for the benefit and protection of the partners themselves.   The equity of the creditor is of a dependent and subordinate character, and is to be worked out and enforced through the medium of the equities of the partner."   If, then, this right is one for the benefit of the partner, it follows that McGrew is the person to call upon a court of equity to prevent the partnership creditors from collecting their debts from his individual property until his individual creditors have been paid.   But how can he enforce this right against mortgages on his individual property, which he himself has executed?   When he gave the mortgages he parted with the right to call upon a court of equity for relief.   He is concluded by the mortgage he exe-

cuted to secure partnership debts. When he executed the mortgage he parted with the equitable right to have his individual property first applied in payment of individual debts.

It is also claimed that the mortgage given to Yates is fraudulent and void, on the ground that it was given to hinder and delay the creditors of McGrew. If the evidence of McGrew was the only testimony in the record on this point, the position of counsel might be tenable; but when the evidence of the other witnesses who were present at the time the mortgage was executed is considered, it is apparent that the mortgage was taken by Yates, and those for whose benefit it was made, in good faith, to secure a valid indebtedness.

It is also claimed that Almira McGrew had a dower right in a portion of the mortgaged premises, and "a resulting trust in the fee thereof," which should have been established and protected, and the decree in favor of Yates ordering a sale of said premises is erroneous. Almira McGrew did not execute the Yates mortgage or the deed of trust to Lee, and she was not made a party to the proceedings to foreclose either of said mortgages. Her interest in the premises, whatever it may be, as she was not a party, and no decree passed against her, remains unaffected by the decree. She may at any time she desires, so far as the decree in this case is concerned, institute proceedings to establish her title, if she has any; and after she has established her title, if she has any, McIntire will then have an opportunity to foreclose his mortgage as against such title. This decree, as we understand it, has not disturbed Almira McGrew in any of her rights, nor has it deprived McIntire of any right or interest which he may have claimed through Mrs. McGrew. Under such circumstances the objection to the decree is not well taken.

The mortgage in this case contained a provision that in case of foreclosure two per cent on the amount found due on the mortgage indebtedness should be allowed, and included

in the decree, as a solicitor's fee. The court allowed this amount in the decree of foreclosure, and it is said that the decree in this regard is erroneous. This case can not be distinguished from *Clawson* v. *Munson,* 55 Ill. 395, where a similar question arose, and the court held that a judgment for an attorney's fee, under a mortgage like the one under consideration, was proper.

Some other questions of a minor character have been raised, but it will not be necessary to consume time in their discussion. We have given the record a careful examination, and find no substantial error.

The decree will be affirmed.

*Decree affirmed.*