## Robert G. Hoffman et al.
### v.
## Ernest A. Schoyer et al.

37 455
143s 598

*Insolvency—Goods in Store—Warehouse Receipts.*

1. The making out in the name of, and delivery of lists of goods in a warehouse to persons holding receipts calling for certain quantities of similar goods without designation in way of marks, brands or numbers, by the parties storing the same, such action being in view of their coming failure, operates to vest in such holders the goods listed as the packages appropriated to their respective receipts.

2. Where the equity of a business firm to have partnership assets go in discharge of partnership debts has been extinguished, the derivative equities of all persons who must claim through them are at an end.

3. No lien can be obtained by creditors upon goods of an insolvent, upon judgments obtained after the same came into a receiver's hands.

[Opinion filed December 11, 1890.]

Appeal from the Superior Court of Cook County; the Hon. Henry M. Shepard, Judge, presiding.

Messrs. Tenney, Church & Coffeen, for appellants.

Mr. Orville Peckham, for the First National Bank of Chicago, appellee.

Mr. H. H. C. Miller, for Beveridge, Rickards & Co., appellees.

Appellants, as mere general creditors, without lien of any kind, are in no better standing before the court than Schoyer & Co. themselves would be.

Our opponents never have denied this proposition, to our knowledge, and do not now. Their way of dealing with it is to put it aside as having no pertinency, or not necessary to discuss. According to them, there is no question in the case but that of identity; that is to say, could the goods which appellees got by means of their receipts be identified as the very goods which the receipts represented (if they represented any) at the time when they were issued. And the existence or non-existence of this identity should be deter-

mined without any regard whatever to the standing of parties before the court, and according as this one fact is found the case should be decided; a view of the function of a court of equity which we believe nothing but extreme necessity would induce the learned counsel to advance. It is the view, however, which they find it necessary to insist on.

It will not be worth while to cite many cases just here on this point, which is one more often assumed and acted on than formally stated by the courts. Those cases cited further on which most nearly approach this case on the facts are authority for it.

The following also state or illustrate the principle: Bonte v. Cooper, 90 Ill. 440; Shaw v. Glen, 37 N. J. Eq. 32; Hanselt v. Harrison, 105 U. S. 401; Stewart v. Platt, 101 U. S. 731; Tawas & Bay Co. R. R. Co. v. Circuit Judge, 44 Mich. 479; Van Heusen v. Radcliff, 17 N. Y. 580 (p. 584).

Sec. 179 of the Warehouse Act is the statute referred to. It is quoted on page 27 of appellants' brief.

The last sentence is the material part, and reads thus:

" All warehouse receipts for property stored in warehouses of class C, shall distinctly state on their face the brand or distinguishing marks upon such property."

Whom were the Legislature seeking to protect in enacting this provision? There can be but one answer: parties advancing money or giving credit on warehouse receipts. Are Schoyer & Co. in that class? The general creditors of Schoyer & Co. (conceding, for the sake of argument, that they have a position different from Schoyer & Co.'s)—are they in that class? If they were—if, when they gave Schoyer & Co. credit, they had required or received warehouse receipts describing by marks and brands the property which we afterward got—we should have no controversy with them; we should, in that case, concede their superior right. But even in that case the statute would really be immaterial; the law would give them their right as promptly and fully without the statute as with it.

The statute itself has not expressly provided penal consequences even for the warehouseman, the transgressor, presumably for reasons which were satisfactory to the Legislature.

Hoffman v. Schoyer.

Upon what principle of construction can the court nevertheless find there a penalty of great severity, aimed, moreover, not even partially, at the transgressor, but directly and wholly at his victim, the party whom the statute was intended to protect? It is simply absurd to suppose for a moment that the statute imposes any duty whatever on one who is neither the warehouseman nor the party who originally placed the goods in store, but is merely a *bona fide* holder of the receipt for value, and it is equally absurd to find by construction a penalty which can only fall on him.

The National Bank Act, by necessary implication, forbids the loaning of money on real estate security, but says nothing of consequences. If a national bank deliberately violates this statutory injunction, the mortgage taken is nevertheless not void but fully enforcible in its hands. The government only, in a direct proceeding against the offending bank, can have a penal effect given to the statute. Union National Bank v. Matthews, 98 U. S. 658.

We ask attention to the law in regard to the confusion of goods. We believe the rule which should govern this case will be found in it. The questions which arise when goods incapable of identification, belonging to different parties, become confused, are determined by the degree of fault which attaches to the respective parties.

Ryder v. Hathaway, 21 Pick. 298, is a case in which the Supreme Court of Massachusetts reviews this whole subject. We quote from the opinion the passage covering confusions arising as in this case :

" By the rules of the civil law, if the intermixture was made wilfully and not by mutual consent, he who made it acquired the whole, and the only remedy for the other party was a satisfaction in damages for the property lost. Vinn. Ad. Inst., Lib. 2, Tit. 1, Sec. 28. This rule seems to be very imperfect, as it would enable one person to acquire the property of another against his will, merely rendering himself liable to pay the value of it. But it undoubtedly went upon the ground that the intermixture was a conversion, and, in this respect, is analogous to many cases of trover and trespass. But our

law adopts an entirely opposite rule.   That very learned commentator, Chancellor Kent, in 2 Kent's Comm. 297, says:
' The common law, with more policy and justice, to guard against fraud, gave the entire property, without any account, to him whose property was originally invaded and its distinct character destroyed.   If A will wilfully intermix his corn or hay with that of B, so that it becomes impossible to distinguish what belonged to A from what belonged to B, the whole belongs to B.'   Hart v. Ten Eyck, 2 Johns. Ch. 62."

Messrs. LYMAN & JACKSON, for Bank of Montreal, appellee.

MORAN, P. J.   The firm of E. A. Schoyer & Co. were for several years tea and coffee merchants in Chicago.   They did not keep a storehouse of their own for their stock, but stored it in a public warehouse and took warehouse receipts for the packages as they were from time to time deposited in the warehouse.   These warehouse receipts the firm were in the habit of depositing with banking houses as collateral security for loans of money.

In February, 1888, a bill was filed by one member of said firm against the company for a dissolution and a settlement of the partnership affairs, alleging that the firm and each of its members were insolvent, and praying for the appointment of a receiver to dispose of the assets of the firm and apply the proceeds under the direction of the court.   The court appointed a receiver, and he reported to the court that a large amount of the merchandise of the firm was hypothecated to various creditors as security for advances, and that the general creditors of the firm had an interest only in the excess of such merchandise after paying the debts, and on February 10th the court ordered, stating it in brief, that the receiver might take such hypothecated property from said secured creditors, they consenting, and sell the same in regular course of trade, and out of the proceeds pay the respective secured creditors their debts and bring the surplus into court for the general creditors.

On February 21st appellants filed their petition, showing

that they were general creditors, and contesting the rights of the secured creditors to have the hypothecated merchandise applied to discharge their debts, and subsequently, after appellants had reduced their claims to judgments, amended cross-bills were filed by them, asking that said order of February 10th be set aside.   The contest which appellants make is against the recognition of the liens of some eight creditors who held warehouse receipts as security for advances, and the parties have substantially agreed as to the facts on which the controversy arises.   The receipts which these creditors held, respectively, as a rule, contained no brands, numbers, or other distinguishing marks by which the property could be identified from the property of a like kind in the warehouse, nor was there any way by which the warehousemen or the receipt holders could identify the property applicable to any receipt. At the time these receipts were issued, and while they were outstanding, Schoyer & Co. had, in this warehouse, other tea and coffee for which no receipts were issued.   The goods for which the receipts were issued were not kept separate in any way from the other goods stored by them.   The tea and coffee was of different varieties and grade and values, and the packages had on them marks and brands and numbers by which they could be distinguished.   From the goods stored the warehousemen allowed Schoyer & Co. to withdraw indiscriminately whenever they saw fit, so long as there was left on hand, packages equivalent in number to those called for by outstanding receipts.   The surplus in the number of packages in the warehouse over the number called for by receipts, the firm used in its business, withdrawing packages from the mass and storing other packages, without reference to when the goods were put in the warehouse, the warehousemen taking care that the warehouse always contained the number of packages called for by the outstanding receipts.   The firm withdrew any of the goods on hand at any time without reference to the receipts, upon depositing an equal number of packages or returning a receipt for an equal number.   At the time the receiver was appointed, a large part of the tea and coffee which was in the warehouse when the receipts contested were

issued, had been withdrawn by Schoyer & Co., though the warehouse contained a sufficient number of packages to answer the receipts.

The withdrawal of goods and changes in property were made without the knowledge or consent of the receipt holders, and they had no notice of such facts until after the receiver was appointed.

Shortly before the filing of the bill to dissolve the partnership, Schoyer & Co., in view of their approaching failure, made from their books lists of goods then in the warehouse, designating them by their marks, brands and numbers, and in these lists apportioned the goods among the holders of receipts, designating which were to go to respective receipt holders, partly arbitrarily, and partly by determining which of the packages in the warehouse were originally pledged to said respective receipt holders. The receipt holders had no knowledge of this act on the part of Schoyer & Co. until after the appointment of the receiver, when a copy of such list so made, was given to each of the receipt holders. Appellants contend that there was no equitable lien created upon the particular goods named in these lists in favor of the respective receipt holders.

It may be, that, strictly speaking, no equitable lien will be created where the particular articles of personal property to which it was intended to attach, are not identified, or capable of identification. But if that be admitted, it would not defeat the receipt holders' rights to the goods described in the lists made by Schoyer & Co., as the packages appropriated to their respective receipts. The acts of Schoyer & Co., and of the warehousemen, were of such a nature as that they would be estopped from asserting, as against the respective receipt holders, that they had no right to hold as security, under these receipts, the goods assigned to said respective receipts in the lists made by Schoyer & Co. Bank of Rome v. Haselton, 83 Tenn. 216; Western Nat. Bank v. Brooks, 42 Legal Intelligencer, 26.

Appellants come into court as partnership creditors, claiming to have their pay from the assets of the firm. Their right to have their pay from these assets is not, and can not be asserted, on any equity of their own, but is asserted on the

equity of the partners to have partnership assets go in discharge of partnership debts. Case v. Beauregard, 99 U. S. 119; Fitzpatrick v. Flannagan, 106 U. S. 648; Ladd v. Griswold, 4 Gilm. 25; McIntire v. Yates, 104 Ill. 491.

The right of the partners to have the property which they have covered by those receipts applied to the payment of other debts than those of the receipt holders, is gone. The equity of the partners being extinguished, the derivative equities of all persons who must claim through them are at an end. The appellants in no way bettered their claims as against the receipt holders in this case by reducing them to judgments. The property was in the hands of the receiver, and thus in the custody of the law, with all the rights of the receipt holders attaching to it, before the judgments of appellants were obtained. They did not, therefore, obtain any lien upon it, and could not have done so by filing a creditor's bill. Jackson et al. v. Lahn, 114 Ill. 287.

The matter therefore stands as it did when appellants filed their petition in the first instance, and they can only assert against the holders of the receipts what the partners themselves could have asserted. This is said, of course, having regard to the admitted fact that there was no fraud on the part of these receipt holders. However loose or careless their conduct, in a business point of view, there is no pretense that their dealings were not *bona fide.*

Appellants insist that as to certain foreign holders of receipts they were entitled to relief, because as to them there were defaults on appellants' cross-bills. Appellants were not entitled to any other than a judgment *in rem* against the foreign banks, as the service upon them was by publication only.

The cross-bill makes no case on which such a judgment could go. The order as to the payment of the money to the foreign banks governed the receiver, and in order to prevent his obeying that order appellants should have had it set aside on motion. But they could not have done that, because they have no case on the facts which would enable them to have such order rescinded.

There is no error, and the decree of the Superior Court will therefore be affirmed.        *Decree affirmed.*