## Merchants State Bank of Centralia, Appellee, v. Chicago, Burlington & Quincy Railroad Company, Appellant.*

1. BILLS OF LADING—*what title transferee of bill of lading takes to goods.* An acceptor of a draft with a shipper's order bill of lading attached, indorsed in blank, becomes the holder in due course of the draft and bill of lading and takes title thereto and to the goods described in the bill.

2. BILLS OF LADING—*what is good consideration for transfer.* A bill of sale of goods from the owner to his creditor, and permission by said creditor to another to issue a bill of lading therefor and dispose thereof, is a valuable consideration for the later transfer of the bill and draft to which attached, to said creditor.

3. DAMAGES—*measure for wrongful delivery of freight.* The measure of damage for wrongful delivery of freight is the reasonable market value of the goods at the place of destination with interest from the time they should have been delivered less any unpaid transport charges.

* Received from clerk of Appellate Court, August 8, 1927.

Merchants State Bank v. Chicago, B. & Q. R. Co., 245 Ill. App. 211.

4. SALES—*pre-existing debt as consideration.* A pre-existing debt is a valid consideration for the execution of a bill of sale.

5. APPEAL AND ERROR—*what record showing of sale consideration unnecessary.* Whether or not a definite extension of debt payment time is necessary to make a good consideration for a bill of sale, the absence from the record of any showing that the extension was not definite will not lead the court to say that there was not a good consideration for the sale.

6. BILLS OF LADING—*nonliability of bill of lading holder for acts of his transferor.* Any acts or admissions of the transferor of a bill of lading occurring after the transfer and without the knowledge of participation of the transferee holder, are not binding on the latter.

7. DAMAGES—*condition of goods when shipped. as bearing on measure of damages.* Evidence of the condition of goods at the time shipped, especially in case they do not deteriorate readily, is admissible as tending to show their condition at the point of destination.

8. CARRIERS—*when shipment's condition at destination immaterial.* Payment by the buyer at the shipping point by draft for goods makes immaterial the condition of the goods at destination in an action by the holder of the bill of lading against the carrier for conversion of said goods.

9. CARRIERS—*shipment delivery without production of bill of lading as cause of damages.* Surrender by a carrier of a shipment to a party who did not produce the bill of lading makes the carrier liable in damages to the legal holder of the bill of lading.

10. CARRIERS—*effect of another's title on bill of lading holder's right to sue for conversion.* The holder of a duly indorsed negotiable bill of lading to sue for conversion of a shipment by the carrier's wrongful delivery without production of the bill of lading cannot be questioned on the ground that the title to the goods was in someone not a party to the suit.

11. CARRIERS—*who is proper party to sue for wrongful delivery.* Negotiation of a bill of lading, though only as collateral, transfers the entire property and the transferee becomes the proper party to sue for the entire loss from conversion by the carrier of the goods shipped.

Appeal by defendant from the Circuit Court of Marion county; the Hon. F. R. DOVE, Judge, presiding. Heard in this court at the October term, 1923. Affirmed. Opinion filed March 10, 1924.

POPE & DREIMEYER, for appellant.

C. H. HOLT and WHAM & WHAM, for appellee.

MR. JUSTICE BOGGS delivered the opinion of the court.

An action was instituted by appellee in the circuit court of Marion county against appellant to recover for the alleged wrongful delivery of a carload of hides, shipped under a uniform shipper's bill of lading.

The declaration consists of two counts, and in substance sets forth that on December 7, 1921, the Block Coal Company, of Centralia, delivered to appellant a carload of hides to be shipped to South Wood River, Illinois, there to be delivered to said Block Coal Company under the terms of said bill of lading issued by appellant, with directions to notify the International Shoe Company of South Wood River; that for value received said Block Coal Company indorsed and delivered said bill of lading to appellee. Said declaration recites the duty of appellant to safely carry and deliver said goods, and charges a failure so to do. One count charges that said goods were thereby wholly lost to appellee, and the other charges that appellant wrongfully converted said goods to its own use.

To said declaration the general issue and two special pleas were filed.

A demurrer was sustained to the first of said special pleas, and the other was withdrawn by the defendant. A jury being waived, said cause came on for hearing before the court, resulting in a finding in favor of appellee and judgment against appellant for the sum of $7,048.22. To reverse said judgment, this appeal is prosecuted.

The record discloses that one Ben Gudder, a junk dealer in Centralia, became indebted to appellee on his promissory notes in the sum of $15,000, and in order to secure the same, on or about October 10, 1921, he executed and delivered to appellee a bill of sale of all beef and calf hides owned, controlled and possessed by him at his place of business in said city. Said bill of sale was duly acknowledged and was filed and recorded in the recorder's office of said county.

214    APPELLATE COURTS OF ILLINOIS.

Merchants State Bank v. Chicago, B. & Q. R. Co., 245 Ill. App. 211.

Thereafter, on or about December 7, 1921, the carload of hides in question was shipped to South Wood River, consigned to the Block Coal Company, and a bill of lading therefor was issued to said coal company by appellant railroad, said bill of lading was, on the same date, indorsed and delivered to appellee. As a part of the same transaction, one Louis Wiseman of Alton, Illinois, drew a draft on the Wiseman Fur Company of Alton for $6,336.96, payable to the order of appellee. This draft, together with a like draft drawn by Wiseman on November 29, 1921, for the sum of $1,000, was delivered to appellee with the bill of lading, as above stated. Appellee forwarded said drafts, attached to said bill of lading, to the Alton National Bank of Alton for collection. A few days thereafter they were returned by said bank to appellee, as unpaid. Thereupon appellee brought suit against appellant, as hereinabove stated.

It is first contended by counsel for appellant that the court erred in its rulings on the propositions of law. Three propositions of law were tendered by appellee, and were all marked "Held" by the court. Nine propositions of law were submitted by appellant, the second and third were marked "Held" and the others were marked "Refused."

Appellee's first proposition of law is as follows: "The Court holds, as a matter of law, under the evidence in this case, that the plaintiff, by the acceptance of the draft with shipper's order bill of lading attached, and endorsed in blank, became the holder in due course of the said draft and bill of lading, and took title thereto, and title to the goods described in the bill of lading, attached to said drafts."

As a general proposition, this unquestionably states a correct principal of law. *Walsh, Boyle & Co. v. First Nat. Bank of Hiawatha, Kan.*, 228 Ill. 446; *Anderson v. Keystone Chemical Supply Co.*, 293 Ill. 468–472; *Means v. Bank of Randall*, 146 U. S. 620. Counsel for

appellant practically concede this to be true, but contend in their argument that "under the evidence we think the court erred in so holding. In order for the bank to acquire title to the hides, some consideration must have passed from the bank to the seller, the Block Coal Co." In other words, counsel contend that, because the record fails to show that any credit was given Gudder on his indebtedness to appellee, or that the Block Coal Company was in any way indebted to appellee bank, or that it was credited with the amount of said drafts, there was no consideration therefor, and that appellee was merely a collecting agent for Gudder or the Block Coal Company.

In answer thereto, appellee insists that while Gudder was indebted to appellee as above stated, he executed a bill of sale to it of the hides then owned by him, and while said transaction may not have amounted to a chattel mortgage as to third parties, it was valid as between Gudder and appellee. Appellee further insists that while said bill of lading was executed by the Block Coal Company, which was not directly indebted to appellee, yet the fact that appellee permitted said coal company to execute said bill of lading and dispose of said property was a sufficient consideration for the drafts in question and for the indorsement to appellee of the bill of lading. *McCagg v. Heacock,* 42 Ill. 153–156; *Beasley v. Henry,* 6 Ill. App. 485–487; *Allmendinger v. Malcolm McDonald Lumber Co.,* 82 Ill. App. 166–167.

We are of the opinion that appellee's point is well taken, and hold that the transaction in question evidences a valuable consideration for the drafts and the assignment of said bill of lading. We therefore hold that the court did not err in its ruling on said proposition.

Appellee's second proposition was a general holding that the evidence in the case warranted a finding in its favor. Whether the second proposition was correct or

not depends on whether or not appellee was entitled to recover.

Appellee's third proposition states as a matter of law that the measure of damages, in case of a recovery, is the reasonable market value of the goods at the place of destination, with interest from the time they should have been delivered, less the unpaid transportation charges, if any. This proposition states a correct principal of law, and the court did not err in so holding.

By the appellant's first refused proposition of law, it asked the court to hold that appellee did not in good faith purchase the bill of lading in question, and did not acquire title to the property in the same. We have already sufficiently disposed of the ruling of the court thereon.

The fourth proposition of law tendered by appellant asked the court to hold that there was no consideration for said bill of sale. In our judgment the court did not err in its ruling on this proposition, for the reason that a pre-existing debt is valid consideration for the execution of a bill of sale or a chattel mortgage. *Butters v. Haughwout,* 42 Ill. 18; *McIntire v. Yates,* 104 Ill. 491–500; *McLeish v. Hanson,* 157 Ill. App. 605–608; *First Nat. Bank of Crown Point, Indiana v. Davis,* 146 Ill. App. 462–469.

In their fifth proposition, the court was asked to hold that in order for an extension of time on the indebtedness held by appellee to be a sufficient consideration for said bill of sale, said extension must have been for a definite period. There is nothing in the record to show that the extension of time was not for a definite period. We are not holding that it was necessary that the extension of time be for a definite period, but even if it were, there is nothing to show that said extension was not for a definite period. The court did not err in its ruling on this proposition.

In the sixth proposition, the court was asked to hold that the indorsement and delivery of the bill of lading did not pass title in the property in question to appellee, for the reason that the drafts attached were only taken for collection. What we have already said with reference thereto sufficiently disposes of this proposition.

The seventh and ninth propositions were general in character, and the court did not err in refusing the same.

The eighth proposition asked the court to hold that Gudder, in his negotiations concerning the sale of said hides, was the agent of appellee and the Block Coal Company, and that his acts in that behalf were the acts of appellee and said coal company. It is the contention of appellant that Gudder was the owner of the goods in question, and that whatever was done in connection therewith was done under his direction.

In this connection, counsel insist that all of the conversations and transactions had between Gudder and Wiseman subsequent to the delivery of said drafts and bill of lading to appellee bank were competent, and that they tended to show that Gudder was in fact acting as the agent for appellee. We have examined the evidence in the record in this connection, and are of the opinion that it fails to support appellant's contention. Counsel intimate, but do not directly charge, that the transaction smacks of fraud, but they wholly fail to point out wherein appellee was in anywise connected therewith. This being true, we hold that the court did not err in refusing to hold said proposition.

It is next contended by counsel for appellant that the judgment in the case is excessive, it being their contention that the hides in question were all of inferior grade and that some of said hides were practically worthless. Several witnesses on the part of appellant who were present when the car was unloaded at South Wood River testified to the effect that said

car contained horse hides, pony hides and goat hides, as well as beef and calf hides, and that they were all of inferior grade and only worth from 1c to 3c per pound.

On the other hand, the testimony on the part of appellee is to the effect that said car contained no horse, pony or goat hides, and that only fresh beef and calf hides were loaded in the car, and that Wiseman, who purchased the same, was present during all the time said car was loaded, and inspected each side before it was loaded. Among the witnesses who testified on behalf of appellee was Joseph F. Clow, agent for appellant, and whose duty it was to check the freight that went into the car. He testified: "In checking this carload of hides, I put down each bundle of hides as they brought it into the car. Louis Wiseman was loading them and he was examining the hides. He inspected all of them. The rejected hides were thrown back in another pile. The others were tied in bundles and put in the car. No rejected hides were put in the car to my knowledge. They could not have been put there when I was not there, because the car was sealed."

In this connection, it should be observed that the record shows that the car stood on the siding at South Wood River for several days, and while there it remained unlocked. If the character of the hides is important in the case, the record discloses that at the time the hides were loaded they were in good condition, and that all damaged hides were rejected by Wiseman and were not loaded in the car. While the law is that the value of the goods at the destination is the measure of damages in an action of trover, still evidence as to the condition of the goods at the time shipped would be admissible as tending to show their condition at the place of destination, and especially would this be true in consideration of the character of hides, as there is nothing in the evidence to show that

they would deteriorate to any appreciable extent in the short period of time required for their shipment.

We are of the opinion, however, and hold that the condition of the goods at the place of destination was not material, for the reason that the record in this case, so far as appellee is concerned, shows that the drafts in question were issued by Wiseman in payment for said goods, all of which were inspected by him as they were being loaded.

It is insisted by appellant, that its evidence which tended to show that Wiseman said to Gudder before the hides were loaded into the car that he did not believe the International Shoe Company would accept them, and that Gudder said to go ahead and send them in and he was taking the responsibility, and the testimony of Wiseman that the International Shoe Company refused to accept the same and that he so notified Gudder and was directed by Gudder to sell the hides for whatever he could get, and that the sale to said International Shoe Company for $2,000 was made on the direction of Gudder, was competent as against appellee, and that in connection therewith they had the right to show the condition of the hides at the place of destination.

The record wholly fails to show that appellee had any notice of said conversations and transactions, occurring after it had come into possession of said drafts and bill of lading, which, under the authorities, passed to it the legal title to the goods in question. We therefore hold that the court correctly ruled that this evidence was not admissible as against appellee.

If we are correct in this conclusion, then the finding of the court that appellant was liable for damages resulting from the surrender of the goods in question without the production of the bill of lading, follows. *Great Western R. Co. v. McComas*, 33 Ill. 185; *Charles D. Stone & Co. v. New York Cent. R. Co.*, 214 Ill. App. 483; *Edgerton v. Chicago, R. I. & P. R. Co.*, 240 Ill. 311;

*Garden City Fan Co. v. Pittsburgh, C., C. & St. L. Ry. Co.,* 220 Ill. App. 126. The bill of lading in question contains the following provision in reference thereto: "The surrender of this original bill of lading, properly indorsed, shall be required before the delivery of the property. Inspection of the property covered by this bill of lading will not be permitted unless provided by law or unless permission is endorsed on the original bill of lading or given in writing by the shipper."

The law further is that appellee, being the holder of said duly indorsed negotiable bill of lading, its right to maintain an action thereon for a conversion of said goods cannot be questioned on the ground that the title was in someone else, not a party to the suit. Illinois Uniform Bill of Lading Act, secs. 23, 11, Cahill's St. ch. 27, ¶¶ 24, 12; *Great Western R. Co. v. McComas,* 33 Ill. 185; *Edgerton v. Chicago, R. I. & P. R. Co.,* 240 Ill. 311; *Stone v. New York Cent. R. Co.,* 214 Ill. App. 483; *Pere Marquette Ry. Co. v. J. F. French & Co.,* 254 U. S. 537.

One to whom a bill of lading is negotiated, although as collateral security, is the proper party to sue for the entire loss from conversion by the carrier of the goods shipped, the bill of lading being indicia of title and operating to transfer the entire property. 10 C. J. 275.

It is assigned as error that the court erred in its rulings on the evidence. What we have heretofore said with reference to the conversations between Gudder and Wiseman sufficiently disposes of this assignment of error. We hold that the court did not err in its rulings on the evidence.

Finding no reversible error in the record, the judgment of the trial court will be affirmed.

*Judgment affirmed.*