JAMES MIX

*v.*

THE NATIONAL BANK OF BLOOMINGTON.

1. EVIDENCE—*to show existence of a National Bank—certificate of the comptroller of the currency.* In a suit by a National Bank, as indorsee, upon a promissory note, under the issue upon a plea of *nul tiel corporation* the plaintiff, against the objection of the defendant, was permitted to give in evidence the certificate of the comptroller of the currency issued under section 22 of the National Bank act, that the association had complied with the law and was authorized to do business. There was, besides, evidence that the bank had been acting as a national bank for several years, and the existence of the bank was acknowledged in the note signed by the defendant, it being made payable at the bank: *Held,* the certificate was properly enough received in evidence, and the proof was sufficient to establish, at least *prima facie,* the existence of the corporation.

2. ASSIGNMENT—*before maturity, as payment or security for pre-existing debt—how far protected.* It has been held that the indorsee of a promissory note before its maturity, taking it as payment or security for a pre-existing debt, shall be deemed a holder for a valuable consideration, in the ordinary course of trade, and shall hold it free from latent defences on the part of the maker.

3. In this case the payee of a note left the same with a bank for collection, the note not then being due, and at the same time the payee indorsed it. The party so leaving the note for collection was surety upon another note to the

same bank, and it was the understanding between the surety and the bank, at the time the former left his note for collection, that the proceeds thereof when collected, should be applied on the note upon which he was surety. Subsequently, and after the maturity of the note left for collection, the note to the bank was renewed, the other note being then turned over to the bank as collateral security for the renewed note. It was *held*, in a suit by the bank, as indorsee of the note so left for collection, the position was not tenable that the bank did not hold this note as collateral security until after the renewal of the other note and after the maturity of the note sued on,—but it was held the bank, as a *bona fide* indorsee of the note sued on, *before* maturity, as collateral security for a pre-existing debt, took and held it free from any latent defences in behalf of the maker.

APPEAL from the Circuit Court of Kankakee county; the Hon. NATHANIEL J. PILLSBURY, Judge, presiding.

Mr. STEPHEN R. MOORE, for the appellant.

Mr. O. W. ALDRICH, and Mr. T. C. KERRICK, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a suit brought by the National Bank of Bloomington, as indorsee, upon a promissory note made by the defendant to one C. M. Nichols, and indorsed by the latter to the plaintiff, as follows:

$2745.25.          *Bloomington, Ill. April* 28, 1875.

Six months after date I promise to pay C. M. Nichols $2745.25, at National Bank of Bloomington, Illinois. . Value received, with interest at ten per cent per annum from date if not paid at maturity.

JAMES MIX.

Indorsed, C. M. NICHOLS.

Besides the general issue, there were the pleas of *nul tiel corporation, non est factum* verified by affidavit, and partial failure of consideration, upon which issues were joined, and found by the jury in favor of the plaintiff, and damages assessed to the amount of the note and interest, upon which judgment was rendered, and the defendant appealed.

It is objected, that, under the issue upon the plea of *nul tiel corporation*, the court below admitted in evidence the certificate of the comptroller of the currency issued under section 22 of the National Bank Act, (U. S. Stat. sec. 5169,) providing (after the association of individuals desiring to organize a national bank has done certain things as required by sec. 13) that "the comptroller shall give to such association a certificate, under his hand and official seal, that such association has complied with all the provisions required to be complied with before commencing the business of banking, and that such association is authorized to commence business." There was, besides, evidence that the bank had been acting as a national bank for eleven years; and the existence of the bank is acknowledged in the note signed by the defendant, it being made payable at the bank. We think the certificate was properly enough received in evidence, and that the evidence was amply sufficient to establish, at least *prima facie*, the existence of the corporation.

It was set up by the defendant that the note had been altered since its execution by adding to it the words " with interest at ten per cent per annum from date if not paid at maturity," and the refusal of the following instruction asked by him is assigned as error, viz :

' You are instructed that if you believe, from the evidence, that the note sued on was changed, in a part material to it, without the consent of defendant, after the defendant had signed it, then the note is void and can not be recovered upon, and in this case you will find for the defendant."

We do not see why this instruction should not have been given had there been evidence tending in any material degree to show the alteration.

The only evidence in respect of any alteration was that of the defendant himself. He expressly refused to say that the note had been altered, and the strongest testimony which he could give was " I think these words (those above) have been

inserted since writing the note. That is my recollection." On the other hand the clerk at the sale of the cattle (the note having been given for the purchase price of cattle bought at a public sale) testified that he drew the notes, and wrote the note sued on; that all the written part, except the signature, was his handwriting, and that the note had not been in any manner changed or altered since the same was given.

The evidence tending to prove any alteration was so slight, that we do not think the defendant has any substantial cause of complaint for the refusal of the instruction. If error, strictly speaking, we do not, under the evidence, regard it as a material error, which should be held sufficient to reverse the judgment.

The ground of defence mainly relied upon was, partial failure of consideration in that the note was given for the payment of the purchase price of a number of short-horn cattle bought at a public sale, and that there was a warranty claimed as being contained in a printed catalogue and breeding list which had been published and circulated, that the cattle were breeders, etc., and that there had been a breach of the warranty. All the questions which have been raised upon this head may be disposed of, we think, upon the ground simply that this is a defence which is not available to the defendant as against the plaintiff in this suit, the indorsee of the note.

The evidence shows that John Nichols, the father of C. M. Nichols, and C. M. Nichols were indebted to the National Bank of Bloomington upon a note for $5000, money borrowed by John Nichols, C. M. Nichols having signed the note as surety; that on October 18, 1875, C. M. Nichols, the payee of the note in suit, left it with the bank as security for the $5000 note, at the same time, and before its maturity, indorsing the note. This is the testimony of C. M. Nichols, and it shows the transfer of the note by indorsement to the bank before maturity as collateral security for a pre-existing debt owing by the payee and his father to the bank.

The case of *Manning* v. *McClure et al.* 36 Ill. 490, settles

the law in this State, that the indorsee of a promissory note before its maturity, taking it as payment or security for a pre-existing debt, shall be deemed a holder for a valuable consideration, in the ordinary course of trade, and shall hold it free from latent defences on the part of the maker. The only attempt at the withdrawal of this case from the reach of that decision is, the claim that the transfer was not made to the bank until after the maturity of the note. This claim is made upon the testimony of the president of the bank that the note was left with the bank on October 18, 1875, for collection, Nichols then indorsing it; that John Nichols owed the bank, and C. M. Nichols was his surety; that he owed the bank $5000; that on February 23, 1876, the John Nichols note, on which C. M. Nichols was surety, was renewed, and the Mix note now in suit was turned over to the bank as collateral security. It is claimed from this that the note, before its maturity, was but left with the bank for collection, and that it was not turned over to the bank as collateral security until at the time of the renewal of the John Nichols note, which was after the maturity of the note in suit. But this witness stated further, in his testimony, that when C. M. Nichols left the note, October 18, 1875, with the bank for collection, it was with the understanding that the proceeds when collected were to apply on his note to the bank. Taking this entire testimony in connection with that of C. M. Nichols, the payee of the note, it shows satisfactorily that at the time the note was first left with the bank in October, before its maturity, it was left as collateral security. It must be held, then, that the bank, as a *bona fide* indorsee of the note before maturity, as collateral security for a pre-existing debt, took and held it free from the defence of failure of consideration in whole or in part.

The judgment must be affirmed.

*Judgment affirmed.*