Delivered December 9, 1890.

———

.S. H. BROWN ET AL. V. THOMPSON & OHMSTEDE.

No. 3265.

1. **Negotiable Note in Hands of Bona Fide Holders.**—A negotiable promissory note was endorsed by the payee for accommodation; the accommodation holders delivered it as collateral to plaintiffs, to whom they were indebted upon a pre-existing debt. Subsequently the maker and payee of the note rescinded the contract of which the note was a part. *Held,* that the plaintiffs were bona fide holders of the note, and it was not subject to any defenses on the ground of failure of consideration or the misappropriation of it by the accommodation holders.

2. **Vendor's Lien Note—Registration.** — A vendor's lien note expressing the consideration and describing the land is entitled to registration, and if recorded it is notice to all subsequent purchasers and encumbrancers.

3. **Marshaling Securities.**—Although a junior lien upon the land had obtained priority of the note, still plaintiffs were entitled to cause the holder of the junior lien notes, if held as security, to disclose what other securities he holds and to cause him to exhaust such other securities.

4. **Bank President.** — A bank and its president are different parties. Plaintiffs seeking to reach securities in the hands of the bank must prove the facts affecting the bank; and that the president when called as a witness by the plaintiffs prevaricates, such misconduct can not be charged against the bank, as it might be against the president if a party. He is but a witness, and if his conduct made it necessary a postponement might be granted to obtain testimony reasonably expected from the president as witness.

APPEAL from Ellis. Tried below before Hon. Anson Rainey.

A statement is given in the opinion.

*W. H. Fears,* for appellant.—1. Where a holder of a note held as collateral security for a debt much smaller in amount than the collateral, and there are equities between the maker or endorser and the party who gave the collateral, the latter are proper parties; and where the fact of the equities are made to appear by proper plea they ought to be brought in and made parties defendant, so that the proper relief may be given.

2. When an accommodation note, given for a specific purpose, is diverted from that purpose and used by the accommodation holder for another and entirely different purpose, the holder who received it from the accommodation holder as collateral security for a pre-existing debt is not an innocent holder for value as against the accommodatiom maker or endorser.

3. An innocent holder for value, who had no notice, actual or constructive, of any prior lien and who on the strength of the security loaned his money, has a priority over one claiming a lien through on older but unrecorded instrument, especially where the latter took the security to secure a pre-existing debt which was not contracted on the strength of the security.

The Ennis National Bank being a lien holder for value without notice, holding collateral the face value of which was only slightly in excess of the debt secured, was entitled to priority over plaintiffs.

*Groce & Templeton* and *D. F. Singleton,* for appellees.—1. Assignment of negotiable paper, even if accommodation paper, as collateral security for a pre-existing debt is a transfer in due course of trade for a valuable consideration and entitles the assignee to recover, though in a proper case, as in this, the recovery will be limited to the debt intended to be secured. Blum v. Loggins, 53 Texas, 121; Liddel v. Crain, 53 Texas, 549; 1 Dan. on Neg. Inst., sec. 793a.

2. Under the circumstances of this case it was the duty of the Ennis National Bank to fully and fairly disclose the amount of its claims against Brown and its collateral held as security therefor, being required so to do by plaintiffs' pleadings and afterwards by special interrogatories to its president; and it being shown that such collateral was in excess of its debt, and the bank and its president willfully failing to show the extent of such excess, the court rightfully presumed it sufficient to equitably require the bank's claim upon the land in controversy to be adjudged subordinate to that of appellees.

HENRY, ASSOCIATE JUSTICE.—Thompson & Ohmstede commenced this suit in the District Court on the 15th day of February, 1888, against S. H. Brown and John M. Cole. On the 2nd day of August, 1888, plaintiffs filed an amended original petition, in which they joined the Ennis National Bank also as a defendant.

It appears that in the month of November, 1886, Brown sold to Cole a tract of land and executed to him a bond for title.

Cole executed to Brown for part of the purchase money a note payable to the order of Brown on the 1st day of January, 1889, for $450, with 10 per cent interest from January 1, 1887, expressed upon its face to be given for a part of the unpaid purchase money of a tract of land which is particularly described in the note. The note expressly provides for a vendor's lien on the land described in it, and was signed by John M. Cole, the maker. Neither the note nor the title bond were recorded. Brown endorsed the note without recourse and delivered the same for their accommodation to King & Roorback.

The defendants pleaded and Brown testified that the purpose and agree-

ment upon which the note was endorsed and delivered by Brown to King & Roorback was to enable them to use it as a means of borrowing money from a party in Waxahachie, and that it was so used, and that the debt for which it was so pledged was subsequently paid off by King & Roorback and the note deposited as collateral for the debt returned, and that the subsequent disposition made of the note by King & Roorback was without the knowledge or consent of Brown.

King & Roorback were indebted to Thompson & Ohmstede in the sum of $210.15, due on the 1st day of January, 1888, and after they received back the accommodation note as above stated they assigned it to Thompson & Ohmstede as collateral security for said indebtedness without other consideration therefor than such pre-existing indebtedness.

Subsequently to the foregoing transactions Brown and Cole canceled the land sale, and the bond was returned to Brown and all of the consideration received by him except the above described note was returned by him to Cole. Then Brown again sold to Cole the same land, and executed to him a deed for it in consideration of five promissory notes made payable to his order by Cole. The deed expressly reserved a vendor's lien for the payment of said notes.

The last notes were endorsed and delivered by Brown to the Ennis National Bank as collateral security for a debt owing by him to the bank.

Thompson & Ohmstede alleged the foregoing facts in their amended petition, and also charged that the transactions between Brown and Cole were fraudulently intended to defeat said note held by them, of which they charged the defendant bank had notice.

They charged further that the land was insufficient security for the payment of all of the notes, and that the defendant bank, in addition to the second set of notes executed by Cole, had in its possession as collateral security from Brown for his indebtedness to it other notes and securities; that the aggregate of such securities held by the bank was more than enough to pay off and discharge all of Brown's indebtedness to it.

Plaintiffs prayed that the defendant bank be required to disclose by its answer the amount of Brown's indebtedness to it, the amount of security held by it therefor, and the amount of such security held by it when this suit was begun. They also prayed that the note held by them be declared to be a superior lien upon the land to the second set of notes given by Cole.

The defendants pleaded the nonjoinder of King & Roorback as parties defendant, and also a general denial.

The defendants took the deposition of J. Baldridge, who was the president of the defendant bank. He testified that as far as he knew the bank had no notice of the note sued upon until after the institution of this suit; that Brown was still indebted to the defendant bank, for which it held the second set of Cole's notes as collateral security.

Upon being cross-examined by plaintiffs this witness, in reply to questions calling upon him for exact and specific information with regard to the amount of Brown's indebtedness to the defendant bank, how it was secured, the names of the makers of the collateral notes held by the bank as security for Brown's indebtedness, the amounts and dates of execution and maturity thereof, and whether the bank had surrendered to Brown some of his collateral notes subsequent to the 15th day of February, 1888, testified that "Brown's indebtedness to the bank at time of transfer of Cole note was from $2000 to $2500, and was secured by Cole notes and other collateral notes; that the Cole notes were as above described; that it was impossible at that moment to give a faithful description of all the other collaterals, as witness's bank did not and does not keep a list of all notes held as collateral security for loans. It is impossible to give an exact description of all the notes held by the bank on the 15th day of February, 1888, or on March 1, 1888, to secure Brown's indebtedness to the bank. Witness did not remember which of these collateral notes had been collected. . Brown's indebtedness to the bank was at the time witness was testifying about $2500, for which the bank held collateral security slightly in excess of said indebtedness. Witness thought he had surrendered notes to Brown since February 15, 1888, and may have surrendered some to him since March 1, 1888, but it was impossible to give a description of them, as witness did not keep a list of all the collateral notes Brown gave him."

The cause was tried without a jury, and among others the court stated the following conclusion of law:

"The Ennis National Bank is an innocent holder for value of the five notes mentioned and would be entitled to a judgment; but it having been shown that it held collaterals in excess of its debt, and failing to show the amount of such excess or the character of said collaterals, plaintiffs are entitled to a foreclosure as against said bank."

Judgment was rendered in favor of plaintiffs against Cole, and with a foreclosure of vendor's lien, for $210.15 with interest.

Appellants assign as error the overruling of their plea for want of parties. The assignment is not supported by a reference to any authority, but it is sufficient for us to say that we can not find in the record any order of the court making any disposition of the plea. The accommodation paper was transferred to plaintiffs as collateral security for a pre-existing debt before its maturity, without notice by them of any defense against it by Brown or Cole, and without any new consideration from plaintiffs.

Under these circumstances they were bona fide holders of the accommodation paper, and it was not subject in their hands to any defenses on the ground of failure of consideration or misappropriation of it by King & Roorback. Dan. on Neg. Inst., 831a; Tied. on Com. Paper, sec. 168;

Big. on Bills and Notes, 498; Swift v. Tyson, 16 Pet., 1; Railway v. National Bank, 102 U. S., 28.

The note held by plaintiffs was entitled to registration under our laws. As it expressly reserved a lien for a fixed sum upon land accurately described, it would, if it had been recorded as a mortgage in the county where the land lies, have been notice to all subsequent purchasers and encumbrancers.

Because it was not proved up or acknowledged and recorded, the Ennis National Bank, not having notice of the lien otherwise, and being a bona fide holder of the second set of notes which were a lien on the land, held, as stated in the conclusion of the district judge, the superior lien.

Notwithstanding this, it was proper for plaintiffs to allege and prove that the bank had other securities to which it could resort, and, under plaintiffs' prayer for general relief, it would have been proper for the decree to have directed that the bank first resort to its other securities, if it had been definitely established that it held such.

There was, however, nothing in the nature of the proceeding to relieve the plaintiffs from the burthen of establishing their own allegations. They charged, and before they could have a decree for such relief it was necessary for them to prove, that the defendant bank had a fund, different from the common one, to which it could, and to which a court of equity should require it to, resort. This was not done. No more was proved than that the bank held collaterals slightly in excess of the debt that they were held to secure.

It is true that the answers of the witness of the bank were evasive—so evasive that if he had been himself the defendant there would have been no error in applying to him the rule that the court applied to the defendant.

It was his duty as a witness to have ascertained information enough from sources that were evidently accessible to him to have answered candidly and fully the questions that were propounded to him.

Though he was president of the bank he was not the bank; he was not the defendant; he was a witness only, and the defendant corporation enjoys the right that every other litigant does when it is called into court to defend itself, to demand of the plaintiff to prove his cause of action by what the witnesses testify, and not by what they may refuse or omit to testify.

No doubt when it becomes apparent to the court that the president of a bank corporation is equivocating or failing to give proper evidence about the affairs of the bank which he either knows or may easily learn, then, rather than that there should be a failure of justice, it would be proper, if delay will remedy the difficulty, to postpone the trial until such process as may be within the power of the court can be resorted to to procure the evidence.

Under the view taken by us of the law, the testimony of the witness King that was excluded was immaterial and therefore properly rejected.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Delivered December 9, 1890.