### S. J. ALEXANDER v. BANK OF LEBANON.

Decided November 23, 1898.

**1. Charge of Court.**

See pleading submitting issues in regard to the history and consideration of certain notes sued on, under which it was improper for the court, in its charge, to refer to the facts therein alleged by defendant and testified to by him, as a "fraudulent scheme."

**2. Negotiable Instrument—Innocent Holder—Pre-Existing Debt.**

The holder of negotiable paper acquired before maturity as collateral security for a pre-existing debt will be protected as an innocent holder, unless he had notice at the time he acquired it of defenses of the maker against the payee.

**3. Same—Interstate Law.**

The same principle applies though the transfer of the notes was made in another State whose courts do not recognize the rights of an assignee as an innocent purchaser for value under such circumstances.

**4. Same.**

Commercial and many other laws of universal application are not exclusively the laws of a particular State, and will be determined by the courts of each State for themselves, though the transaction occur in another jurisdiction.

**5. Negotiable Instrument—Dishonor—Notice.**

Default in the payment of one of a series of notes will not be notice to the holder thereof of dishonor of the notes not yet due where there is nothing on the face of the notes to show that they were given in part payment of the same consideration.

APPEAL from McLennan. Tried below before Hon. MARSHALL SURRATT.

*T. A. Blair* and *John W. Davis,* for appellant.

*S. E. Stratton* and *Sanford & Lee,* for appellee.

KEY, ASSOCIATE JUSTICE.—Appellee sued appellant on three promissory notes, one of which was barred by limitation and was eliminated from the case by the court's charge. Verdict and judgment were rendered for appellee for the amount of the other two notes, and the defendant has appealed. As to these two notes, appellant interposed the following defense:

"4. Defendant further says, answering plaintiff's suit on the two $1100 notes described in his petition, dated October 18, 1892, that said two $1100 notes were executed and delivered to said E. Harper upon the distinct understanding and agreement between the said Harper and this defendant that said notes were never to be collected, but that they were merely executed as an accommodation to said Harper, not to be used by him in any way so as to make this defendant liable therefor; all of which was known to plaintiff bank and its cashier, S. G. Stratton, before the execution of the same; on the date of the execution of the same and at the time that said notes were indorsed by said Harper and turned over to plaintiff bank, that said Stratton, the cashier of said bank, at the time knew all about the arrangement, advised it, and was a party to it. Defendant further says that no consideration whatever of any character or kind was paid by said Harper to this defendant for said notes; all of which was known to the plaintiff bank and its cashier, S. G. Stratton; that no consideration of any kind whatever was paid by said bank to said E. Harper, the payee in said notes, or anybody for it; that said notes were executed under the following circumstances and conditions: that at the time of the execution of the same E. Harper was indebted to plaintiff, and there was pending against said E. Harper in the courts of Mc-Lennan County, Texas, a suit by the son of C. C. Hancock, the former partner of E. Harper, in the partnership as set out in clause 3 of this answer; that the claim of young Hancock was an unjust one, but of

doubtful result, inasmuch as C. C. Hancock, the former partner, was aiding his son in establishing the same against said E. Harper, and which claim was defeated. But in order to meet the contingency of a recovery by young Hancock against said Harper, said Harper, by the advice and instigation of S. G. Stratton, the cashier of plaintiff bank, had Alexander to make his notes to said Harper, which are the two $1100 notes sued on herein and other notes not sued on, and which two $1100 notes sued on herein were indorsed by said Harper to plaintiff bank, but it was distinctly understood and agreed between said Harper, the plaintiff bank, and said Stratton, its cashier, that said notes were never to be collected. In order to cover up said property, as suggested by plaintiff bank through its cashier, said property was turned over to defendant Alexander to be sold by him for said Harper, and the proceeds of the sale of such stock to be paid by this defendant to said Harper, and by said Harper to plaintiff bank, which has been done. This defendant did not want to go into this agreement, and said Harper promised him that it should never hurt him. Plaintiff bank knew all about it, was a party to it, and advised it, was protected by it and received the benefit from it, and this defendant sold the stock that was placed in his hands by said Harper, and said Harper paid the same over to plaintiff bank and plaintiff agreed to return said notes to this defendant. Said two $1100 notes, by agreement between this defendant and said Harper, the payee therein, and with the knowledge, consent, and acquiescence of plaintiff bank, were never to be collected by said Harper, or by the bank from this defendant, but the proceeds of said stock was to be paid over by defendant to said Harper and by him to plaintiff, all of which was done as aforesaid, and all of which was fully, clearly and distinctly understood and agreed on by said Harper, said Stratton, said bank, and this defendant. The only purpose of said notes being to show that said Alexander had property in his hands belonging to said Harper, which he was to sell and turn over the proceeds to said Harper and said Harper to plaintiff; all of which has been done. The proceeds of the sale of said stock was paid over to said Harper by said Alexander, was paid over by said Harper to plaintiff bank, and plaintiff bank promised said Harper to turn over said notes to this defendant, wherefore this defendant says that there was no consideration for said notes; that the same was never intended to be circulated, and that the proceeds of the property evidenced by same had been long since paid over to plaintiff bank, in pursuance of the agreement between the parties, whereby the defendant says the plaintiff ought not to have and maintain this suit on said notes against said defendant; all of which this defendant is ready to verify, puts himself upon the country, and prays the judgment of the court."

Harper testified in substance to all the facts alleged in the answer quoted; but in so far as his evidence tended to show the bank had notice of the transaction between him and appellant, he was sharply contradicted by the testimony of S. G. Stratton, the bank's cashier. Appellant

also testified that the notes were executed in the manner and for the purpose alleged in his answer.

In charging the jury the court used this language in describing the appellant's defense: "The defendant alleges that said two $1100 notes were executed by him to E. Harper, under an agreement made between him and said Harper, with the knowledge and under the advice of plaintiff's cashier, and in furtherance of a fraudulent scheme, whereby said Harper transferred to defendant a large amount of personal property for the purpose of defrauding his creditors, and that said notes were executed by him as the apparent consideration therefor and by the said Harper indorsed to plaintiff, whose cashier had advised said fraudulent transaction, and who had full knowledge thereof when it received said notes from Harper." And in another paragraph, in submitting to the jury the issues raised by the answer quoted, the court refers to the transaction alleged therein as a "fraudulent scheme."

Appellant objects to the charge quoted as improperly characterizing his defense, tending to prejudice the jury against him, and calculated to influence them in determining the credibility of his witness E. Harper.

This objection is well taken and requires a reversal of the judgment. The pleading referred to expressly charges that the claim of young Hancock in his suit against Harper was unjust and was ultimately defeated. If the claim was unjust, a judgment obtained upon it would have been unjust, and while the agreement pleaded may, in a restricted and technical sense, have been in fraud of Hancock's legal right to enforce a judgment obtained upon his unjust claim, if he should obtain such judgment, it involved no moral turpitude, and therefore was not fraudulent in the popular sense of that term. We think it probable that the jury accepted the court's language in its popular sense, and understood it as conveying the idea that the alleged transaction between appellant and Harper was reprehensible; and if they so understood it, it was calculated to disparage both appellant and his witness Harper, and may have influenced the jury in deciding the case.

It is manifest that the transaction referred to was not in fraud of the bank's right, because it had a recorded mortgage on the very property Harper was pretending to sell; and therefore the pretended sale could not defeat its right to subject the property to its debt. Besides, the plea alleges that the bank was cognizant of and agreed to the transaction. In fact, the motive of Harper and appellant in the transaction referred to is immaterial in this case, if the agreement as to the notes was as alleged; because if appellant would not be liable on the notes if Harper were suing, he is not liable to the bank, unless it is an innocent holder, no matter how much they may have intended to defraud a third party. Therefore it was unnecessary for the court to use the terms fraud, defraud, or fraudulent, in any sense, in its charge; and the use of them as shown was, we think, prejudicial to appellant.

According to the bank's testimony the notes in suit, which are nego-

tiable in form, were assigned to it as collateral security for a pre-existing debt; and counsel for appellant urgently insist that, under such circumstances, the bank can not claim protection as an innocent holder, even granting that it had no notice of the want of consideration for the notes. This contention is based upon the proposition that when no consideration is advanced when property is acquired, and it is taken merely as security for an antecedent debt, the holder is not entitled to protection as an innocent purchaser.

Whether or not the rule applies in cases like this, when the property acquired is negotiable paper, there is conflict in the decisions. Some courts apply this rule to negotiable instruments, while others do not; and the reasons given for making the distinction are not always the same. The question has been frequently considered by our Supreme Court, and the doctrine announced that the holder of negotiable paper, acquired before maturity, as collateral security for a pre-existing debt, will be protected as an innocent holder, unless he had notice at the time he acquired it of the equities existing between the maker and the payee. Greneaux v. Wheeler, 6 Texas, 528; Liddell v. Crain, 53 Texas, 549; Heffron v. Cunningham, 76 Texas, 318; Brown v. Thompson, 79 Texas, 58; Harmon v. Gunter, 83 Texas, 66. In some of these cases it does not appear that this identical question was involved, and the expressions of the court upon it appear to be dicta. In two of them, however (Liddell v. Crain, 53 Texas, 555, and Brown v. Thompson, 79 Texas, 58), counsel for appellant concede that the question was presented and decided against their contention. It is urged that these cases were not well considered; that they are unsound in principle, and should be overruled. We are not prepared to concur with either of these views. In Brown v. Thompson, the opinion cites Dan. on Neg. Inst., 831a; Tied. on Com. Paper, 168; Big. on Bills and Notes, 498; Swift v. Tyson, 16 Pet., 1; and Railway v. Bank, 102 U. S., 28; all of which support the doctrine announced.

In Railway v. Bank, supra, as in this case, the original payee had indorsed the note in blank and had delivered it to the bank as collateral security for a pre-existing debt; and in two elaborate opinions, reviewing many authorities, the court held that the bank having no notice of the equities existing between the maker and the original payee at the time it accepted the note as collateral security, was an innocent holder, and that the equitable defense interposed was not available. We are satisfied with the reasons given in that case in support of the doctrine announced. Therefore, because the question has already been settled in this State against appellant, and as we believe correctly, we rule against him on this point.

The further contention is made that as the notes were assigned to appellee in the State of Tennessee, and as the court of last resort of that State has held that the holder of negotiable paper, acquired before maturity and accepted merely as security for a pre-existing debt, is not

entitled to protection as an innocent holder, this court should apply that rule in this case.

The notes are, in terms, payable in Texas, and neither party averred in the pleading that the contract by which appellee acquired them was made in Tennessee; hence appellee contends the question referred to is not in the case. But if it be conceded that the question is presented for decision, we think it should be ruled against appellant. There was no proof of any statute of Tennessee regulating the matter; and the question being one of commercial law of common interest to all civilized nations, we are of the opinion that the courts of this State are not bound to accept the decisions of that State as the law of the case, although the contract was made in that State. The Congress of the United States enacted a statute declaring that "the laws of the several States, except where the Constitution, treaties, or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law in the courts of the United States, in cases where they apply." In construing this statute in Swift v. Tyson, 16 Peters, 1, and Railway v. Bank, 102 U. S., 15, it is held that the decisions of State courts generally are not laws within the purview of the statutes quoted, which is limited to positive statutes of the States, and the construction thereof by local tribunals, and to rights and titles to real estate, and other matters immovable and intraterritorial in their nature and character; and that the decisions of the courts of last resort of the State of New York are not binding upon Federal courts on the identical question now under consideration. The matter is not controlled by statute in this State; but the reasons upon which these decisions are founded are equally applicable when, in the absence of a statute regulating the matter, courts are asked to enforce the laws of another State. Commercial laws, and many other laws of universal application, are not exclusively the laws of any particular State; and therefore the courts of each State should determine such laws and their application for themselves.

It appears that at the time appellant executed the two $1100 notes sued on, due November 1, 1893, and March 1, 1894, he also executed another note, likewise for $1100, and payable to the order of Harper. The time of the maturity of this note, which is not sued on, is not shown, other than in the spring of 1893. The bank acquired this note at the same time and for the same purpose that it did the two in suit, and it was not shown to have been paid. It was also shown by testimony that these three notes were all given for the same consideration, but they do not disclose that fact upon their faces.

The court charged the jury, in substance, that the bank could claim protection as an innocent holder for any advances made to Harper before November 1, 1893, the maturity of the first $1100 note sued on, if the other facts were such as to entitle it to such protection. Counsel for appellant contend that as there was a series of three notes, executed as part of one transaction, and all acquired by the bank at the same time

and for the same purpose, that default in the payment of the first one falling due was notice of the failure of consideration, even as to those not due. If the notes had shown upon their faces that each was given in part payment for a common consideration, this position would be tenable. Harrington v. Claflin, 91 Texas, 294. But not disclosing that fact, the rule invoked does not apply.

The third and fourth assignments of error are overruled, because the undisputed testimony shows that the Texas property referred to in the special charge asked belonged to Hancock & Harper and E. Harper and not to the bank, though the latter held a lien upon it; and the question of Harper's agency of the bank in the transaction referred to was not in the case.

For the error pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*