## THIRD NAT. BANK OF SPRINGFIELD, MASS., et al. v. NATIONAL BANK OF COMMERCE et al.

(Court of Civil Appeals of Texas. Ft. Worth. July 1, 1911.)

1. APPEAL AND ERROR (§ 1192*)—REVERSAL—MANDATE—EFFECT.

The issuance by the Supreme Court of a mandate in a certain case is binding upon the trial court and the Courts of Civil Appeals, as against the objection that neither party sued out a mandate within a year after reversal and remand.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4647; Dec. Dig. § 1192.*]

2. BILLS AND NOTES (§ 539*)—FINDINGS—EFFECT—STATUTE.

As Sayles' Ann. Civ. St. 1897. art. 1266, provides that where a defendant shall rely upon any payment, counterclaim, or set-off, he shall file with his plea an account distinctly stating the nature of such obligation, and on failure to do so, he shall not be entitled to prove the same, a finding that it was intended by the maker of a note that a later note should be substituted for a prior one, is not equivalent to a finding that the payee agreed with the maker to accept the second note in satisfaction of the first.

[Ed. Note.—For other cases, see Bills and Notes, Dec. Dig. § 539.*]

3. BILLS AND NOTES (§ 358*)—BONA FIDE PURCHASERS—CONSIDERATION—TAKING AS COLLATERAL.

A transferee who takes a note by indorsement before maturity and without notice of defects, as collateral security for a pre-existing debt, will be protected as any other bona fide purchaser.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 913–921; Dec. Dig. § 358.*]

4. BILLS AND NOTES (§ 209*)—TRANSFER WITHOUT INDORSEMENT.

In view of Sayles' Ann. Civ. St. 1897, art. 307, providing that any person to whom a negotiable instrument is assigned, may sue in his own name, and if he obtained the instrument before maturity for a valuable consideration and without notice of defenses, he shall be compelled to allow only the just discounts against himself, a transferee taking without indorsement has the same rights as one taking with indorsement.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 497–501; Dec. Dig. § 209.*]

5. EVIDENCE (§ 97*)—BURDEN OF PROOF—FOREIGN LAWS.

Where an excerpt from a decision offered by the defendant as proof of the law of a foreign state did not show the date, it could not be taken as establishing the law of that state at the time the litigation arose, the burden of proof being upon the defendant to show that the law of the foreign state was different from that of the forum.

[Ed. Note.—For other cases, see Evidence, Dec. Dig. § 97.*]

6. BILLS AND NOTES (§ 328*)—BONA FIDE PURCHASERS—WHAT LAW GOVERNS—RULES OF DECISION.

In an action involving a note transferred in Missouri, a rule of Missouri law, not based upon any statute, when contrary to the law of the forum and the weight of authority, is not binding upon the domestic courts.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 788; Dec. Dig. § 328.*]

7. CHATTEL MORTGAGES (§ 157*)—PRIORITY OF LIEN—EQUITABLE JURISDICTION—GROUNDS.

In the absence of registration statutes, the right of priority between junior and senior chattel mortgagees where the mortgages were given to secure notes, is a subject peculiarly applicable to equitable jurisdiction.

[Ed. Note.—For other cases, see Chattel Mortgages, Dec. Dig. § 157.*]

8. CHATTEL MORTGAGES (§ 101*)—CONSTRUCTION—PROPERTY—LEX SITUS.

When a chattel mortgage is executed in a state other than that in which the property is situated, the lex situs governs.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 185, 186; Dec. Dig. § 101.*]

9. CHATTEL MORTGAGES (§ 150*)—REGISTRATION—PRIORITY.

Where a chattel mortgage on cattle was registered, such registration was constructive notice to a subsequent mortgagee, and the first mortgage takes priority over the second mortgage.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 246–252; Dec. Dig. § 150.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

**10. CHATTEL MORTGAGES (§ 248*)—PAYMENT —RIGHTS OF THIRD PERSONS.**

The owner of cattle gave a chattel mortgage upon them to secure a note given to a commission house, and later gave a second note and mortgage upon the same cattle which was to discharge the first. The commission house had already negotiated the first note and mortgage, and they likewise negotiated the second to other parties. When the first mortgagee attempted to foreclose his mortgage, the second mortgagee, in consideration of the services performed by the maker in replevying the cattle, taken upon the sequestration levy of the first mortgagee, canceled and returned the second note. *Held* that, as the defense of payment arose solely for the benefit of the mortgagor and maker of the note, the second mortgagee could not urge it.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 512, 513; Dec. Dig. § 248.*]

Appeal from District Court, Hemphill County; F. P. Greever, Judge.

Action by the National Bank of Commerce, doing business in Kansas City, Mo., against the Third National Bank of Springfield, Mass., and others. From a judgment for plaintiff, defendant named appeals. Affirmed.

I. N. Watson, Douglass & Watson, and B. M. Baker, for appellant. H. E. Hoover and Elijah Robinson, for appellees.

DUNKLIN, J. This suit was instituted by the National Bank of Commerce doing business in Kansas City, Mo., against J. H. Kenney, P. W. Kenney, J. W. Lambert, and the Third National Bank of Springfield, Mass., on a promissory note executed by said J. H. Kenney, indorsed by P. W. Kenney and J. W. Lambert, and secured by a chattel mortgage on certain personal property. It was alleged that the Third National Bank of Springfield, Mass., had converted to its own use property upon which said chattel mortgage had been given. From a judgment in favor of the plaintiff the defendant the Third National Bank of Springfield, Mass., has appealed. A former appeal of the same case was determined by our Supreme Court, and its decision is shown in National Bank of Commerce v. Kenney, 98 Tex. 293, 83 S. W. 368. The last trial of the case was by the court without a jury, and the following findings of fact and conclusions of law were filed:

**"Findings of Fact.**

"(1) The parties hereto have agreed that the plea of J. H. Kenney, P. W. Kenney, and J. W. Lambert that they have been discharged in bankruptcy, having been sustained on the former trial of this case, and the judgment of this court having been rendered in their favor, and said plea and judgment having been affirmed by the Supreme Court of this state, that said J. H. Kenney, P. W. Kenney, and J. W. Lambert are no longer parties in interest in this case, and that the sole controversy herein is now between the plaintiff, the National Bank of Commerce of Kansas City, Mo., and the defendant the Third National Bank of Springfield, Mass.

"(2) I find that the firm of Ladd, Penney & Swazey, who were doing a live stock commission business at Kansas City, Mo., borrowed from plaintiff bank on August 10, 1899, the sum of $50,000, giving therefor their note to mature on December 12, 1899; and that this note was renewed by said firm from time to time.

"That on November 6, 1899, the said Ladd, Penney & Swazey, borrowed from said plaintiff bank an additional sum of $30,000, giving therefor their note to mature January 5, 1899, which said note .was renewed by said firm from time to time.

"(3) I also find that at the time said Ladd, Penney & Swazey borrowed said $50,000 from plaintiff bank, it was agreed that the amount of the loan should be placed to the credit of said firm, in the Stockyards Bank of Commerce at Kansas City, Mo., where said firm was to keep its checking account, and that, for the purpose of securing said indebtedness to said National Bank of Commerce, said firm should keep on deposit in said Stockyards Bank of Commerce, either in money or notes, or both, an amount not less than their indebtedness to plaintiff bank, the said firm to have the right to exchange collateral to suit their convenience; that is, they might withdraw any note or notes by depositing other notes or cash in lieu thereof, or might check on their said account in said Stockyards Bank of Commerce by depositing notes equal to the amount checked out. The same arrangement also covered 'and applied to the said $30,000 loan, and to all renewals of both the said loans.

"(4) I also find that on the 29th day of November, 1899, J. H. Kenney made, executed, and delivered to Ladd, Penney & Swazey his promissory note for the sum of $7,259.80 (herein referred to as the note sued on) due and payable 120 days after date, with interest at maturity at the rate of eight (8) per cent. per annum, at the American National Bank of Kansas City, Mo., which note was dated and signed at Canadian, Tex., was indorsed on the back thereof by P. W. Kenney and J. W. Lambert, and was secured by a mortgage executed by J. H. Kenney, bearing the same date, upon 150 cows, 50 coming two year old heifers, 50 calves, and 9 bulls, all high-grade Hereford or Durham cattle, situated in Hemphill county, Tex., and branded    on loin and    on left side and on left hip. This mortgage was duly stamped with the required amount of revenue stamps, duly canceled, and was duly recorded in proper records of said Hemphill county, Tex., on the 20th day of January, 1900.

"(5) I also find that during the years 1899 and 1900 P. W. Kenney, J. H. Kenney, and J. W. Lambert conducted quite an extensive business with said Ladd, Penney & Swazey, and their account was run in the name of P.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

W. Kenney. Under the method in which their business was conducted, said Ladd, Penney & Swazey gave the Kenneys and Lambert credit, on the aforesaid account, for the amounts of the notes (secured by mortgage) executed and delivered to them, less discount and expenses, and charged to them on such account such sums as they paid to or for them. Said note of November 29, 1899, the note herein sued on, with two other notes of same date, was executed by said Kenneys and Lambert to Ladd, Penney & Swazey pursuant to an agreement whereby said firm was to furnish money to pay Robert Moody for a large number of cattle which said Kenney and Lambert had bought from him.

"On the 17th day of January, 1900, Ladd, Penney & Swazey paid said Moody for said cattle, and charged to said Kenney the amount so paid; and on January 18, 1900, credited said Kenney account with the proceeds of said note of November 29, 1899, the note herein sued on, and two other notes of the same date. J. H. Kenney, P. W. Kenney and J. W. Lambert received from Ladd, Penney & Swazey full and valid consideration for the note herein sued on.

"(6) I also find that under the aforesaid agreement between the plaintiff bank and said Ladd, Penney & Swazey, as to collateral to secure the indebtedness of said firm to said bank, the plaintiff bank, through its representative, the Stockyards Bank of Commerce, on the ——— day of January, 1900, received from said Ladd, Penney & Swazey the said note of November 29th, 1899, the note herein sued on, and on said date Ladd, Penney & Swazey checked out of said Stockyards Bank of Commerce a sum equal to the exact value of said note at that time.

"(7) I also find that said note herein sued on was not indorsed by Ladd, Penney & Swazey when it was passed from them to the plaintiff bank, but I find that it was the intention and custom of said firm to indorse all notes so passing from them to said plaintiff bank, and that the failure to indorse this note was an error, mutual mistake, and oversight on the part of each party.

"(8) I also find that on February 9, 1900, J. H. Kenney executed and delivered to Ladd, Penney & Swazey another note for the sum of $7,259.80, which note was, as to amount, terms, makers, indorsers, payee, and number, the same as the note of November 29, 1899, herein sued on, the difference in said two notes being that the last note was dated February 9, 1900, and was payable six months after that date at the Interstate National Bank of Kansas City, Kan. This note was likewise secured by a mortgage given upon the same cattle, situated in Hemphill county, Tex., described in the mortgage securing the note herein sued on, which mortgage was executed and acknowledged by J. H. Kenney on the 10th day of February, 1900, and was recorded in Hemphill county, Tex., on the 15th day of February, 1900. This mortgage likewise had the necessary stamps attached thereto, duly canceled.

"It was intended by the Kenneys and Lambert that this note of February 9, 1900, should be substituted for said note of November 29, 1899, the note herein sued on; but I find that at the date of the execution and delivery of said second note and mortgage and prior thereto the plaintiff bank was the legal holder and owner of said note of November 29, 1899, the note herein sued on, and that it had paid full value therefor.

"(9) I also find that the Kenney aforesaid account was never given any credit by Ladd, Penney & Swazey for the second note and mortgage; but that Ladd, Penney & Swazey on the 19th day of February, 1900, sold said second note to the defendant the Third National Bank of Springfield, Mass., and received in exchange therefor a note of Ellison and Blanke which they had theretofore deposited with said Third National Bank, and some $845 in a draft, that being the difference between the value of the two notes entering into the transaction; and I further find that at the time the defendant bank acquired said second note it had no knowledge of the existence of said first note and mortgage, which was then held by plaintiff bank, other than such notice as resulted from the record of the said first mortgage in Hemphill county, Tex.

"(10) I also find that the firm of Ladd, Penney & Swazey failed in the month of June, 1900, and that at the time of their failure there was due to plaintiff on the $50,000 indebtedness above mentioned a sum in excess of $42,000, no part of which or the interest thereon has ever been paid; and that there was at that time due to plaintiff on the $30,000 indebtedness above mentioned the sum of $9,000, no part of which or the interest thereon has ever been paid.

"I further find that the plaintiff bank acquired the note dated November 29, 1899, the note herein sued on, in the due and regular course of business and parted with full value therefor prior to the time of the execution by the Kenneys and Lambert of the note of February 9, 1900; and also find that at the time the plaintiff so acquired the note herein sued on, the same was a valid and binding obligation on the makers hereof, J. H. Kenney, P. W. Kenney, and J. W. Lambert to said firm of Ladd, Penney & Swazey, and that at that time no defense whatever existed in favor of any of the makers or indorsers of said note as against said firm of Ladd, Penney & Swazey or as against the plaintiff bank.

"(12) I also find that the evidence fails to show that at the time of the execution of the note dated November 29, 1899, the note herein sued on, or at any time since that date, there was in force in the state of Missouri any statutory law changing or in any way modifying the general law applicable to the notes in question.

"(13) I also find that under the law of the state of Missouri, as announced by the courts of said state, applicable to the general subject of commercial paper, the note herein sued on was and is a negotiable instrument, and that said note having been transferred by delivery and not by indorsement, is subject, in the hands of the plaintiff bank, to such defenses *only* as existed at the time it was transferred to plaintiff bank by said Ladd, Penney & Swazey; and find that no defense existed against said note at the time it was so acquired by the plaintiff bank.

"(14) I further find that on the 5th day of July, 1900, the plaintiff bank filed suit in the district court of Hemphill county, Tex., upon the note of November 29, 1899, and sought to foreclose the mortgage upon the cattle in controversy, and at that time sued out a writ of sequestration and caused the same to be levied, by the sheriff of Hemphill county, Tex., on so many of the cattle in said mortgage described as could be found.

"(15) I also find that the cattle that were so levied upon by the sheriff under the plaintiff's said writ of sequestration were, on July 16, 1899, replevied by J. H. Kenney, he giving proper replevy bond with the National Surety Company as surety thereon, which bond was accepted by the said sheriff and the cattle upon which he had levied and of which he had taken possession under the aforesaid writ, were turned over by him to said J. H. Kenney, and that said Kenney immediately turned over said cattle to the defendant the Third National Bank or Springfield, Mass.; and I further find that said cattle were turned over by said Kenney to said Third National Bank under an agreement between said Kenney and said bank that said bank would, in consideration thereof, cancel and return to said Kenney said note of February 9, 1900.

"(16) I also find that the said cattle so turned over to said Kenney and by him delivered to said Third National Bank of Springfield, Mass., were, on said 16th day of July, 1900, of the value of $4,700, for which sum they were sold by said Third National Bank.

### "Conclusions of Law.

"(1) That the plea of the defendants, J. H. Kenney, P. W. Kenney and J. W. Lambert, of their discharge in bankruptcy, having been sustained by the judgment of this court on the former trial of this case, and so much of said judgment having been affirmed by the Supreme Court of this state, the plaintiff is not entitled to recover anything as against either of said Kenney or Lambert but they are entitled to a judgment against plaintiff for so much costs as have been incurred in their behalf in this case.

"(2) The note held by the plaintiff bank and herein sued on is a negotiable instrument, and as such, the plaintiff's legal rights thereunder are governed by the general commercial law applicable thereto, and the construction placed thereon by the courts of Texas; and that under said law, as construed by the courts of Texas, as well as by the courts of Missouri, said note is a negotiable instrument, and is subject in the hands of the plaintiff bank to such defenses only as existed at the time it acquired the same.

"(3) The plaintiff bank, having acquired the note herein sued on in the usual course of business, for valuable consideration and prior to the time the second note was executed by the Kenneys and Lambert, took and holds good title thereto, and its right to enforce the payment thereof against the cattle covered by the mortgage given to secure the same, as against the holder of the note and mortgage executed on February 9, 1900—that is, the Third National Bank of Springfield, Mass.—was not, under the laws of the state of Missouri, or the laws of the state of Texas, defeated or in any way impaired by the execution of the substitute note and mortgage of February 9, 1900.

"(4) The note sued on by plaintiff being a negotiable note, and acquired by plaintiff before the maturity thereof, in due course of business, for valuable consideration, was, in its hands, subject only to such defenses as existed against it at the time the plaintiff bank acquired it; and the evidence being that at the time plaintiff bank acquired said note the substitute note had been issued, and that there was no defense against the note herein sued on, the plaintiff's legal right to recover was not defeated by the execution of the duplicate note and mortgage and its acquisition by the Third National Bank of Springfield, and, as between the plaintiff bank and the defendant bank the plaintiff is entitled to recover of the defendant bank the value of the cattle by it taken and appropriated as hereinbefore stated, together with interest thereon from date of said taking and appropriation to this date, at the rate of 6 per cent. per annum.

"(5) That the cattle covered by the mortgage given to secure the note herein sued on and taken by the defendant Third National Bank of Springfield, Mass., being on said 16th day of July, 1900, of the value of $4,700, the plaintiff bank is entitled to judgment against the defendant bank for said amount together with interest thereon from July 16, 1900, at the rate of six per cent. per annum, aggregating the sum of $——, together with its costs in this case laid out and expended, except such costs as accrued upon the trial of the issue between plaintiff bank and J. H. Kenney, P. W. Kenney, and J. W. Lambert."

Section 4488 of the Revised Statutes of Missouri (1899) was introduced in evidence, reading as follows: "In actions on assigned accounts and nonnegotiable instruments, the defendant shall be allowed every just offset or other defense which existed in his favor at the time of his being notified of such assignment." Also section 4151 of the same

statutes reading as follows: "Common law in force. The common law of England and all statutes and acts of Parliament made prior to the fourth year of the reign of James the First, and which are of a general nature, not local to that kingdom, which common law and statutes are not repugnant to or inconsistent with the Constitution of this state, or the statute laws in force for the time being, shall be the rule of action and decision in this state, any law, custom or usage to the contrary notwithstanding." These were the only statutes of the state of Missouri proven.

[1] By its first assignment of error appellant complains that the trial court erred in overruling its motion to dismiss the cause because no mandate was sued out by either party in the Supreme Court of Texas within one year after the case was reversed and remanded on the former appeal. The issuance of the mandate by our Supreme Court is decisive and binding upon the trial court as well as upon this court of the question presented by this assignment, and the assignment is accordingly overruled. National Bank of Commerce v. Kenney (Sup.) 94 S. W. 328.

Numerous findings of fact other than the findings of the law of Missouri are attacked by appellant as having no support in the evidence. Answering those assignments we deem it sufficient to say that we have carefully examined the record, and find evidence sufficient to sustain all those findings.

[2] While the trial court found that "it was intended by the Kenneys and Lambert that this note of February 9, 1900, should be substituted for said note of November 29, 1899, the note herein sued on," there was no finding that the payees agreed with the makers to accept the second note in lieu of and in satisfaction of the first note. It does not appear from the record that appellant requested a further finding by the court upon this issue. In their brief counsel for appellant seem to proceed upon the theory that the court found a legal and binding agreement between the makers and payees of the second note that the same should be accepted by the payees in full satisfaction of the first note.

By article 1266, Sayles' Civil Statutes 1897, the burden is placed upon the defendant in a suit to plead and prove payment of a debt claimed by the plaintiff. As this statute pertains to the remedy only for the enforcement of the rights of the parties, and not to the rights themselves, it must be given effect in this suit, and we do not think that the findings of the trial court show that appellant established the defense of payment of the first note to the payees by the makers.

As the principal defense urged by appellant was satisfaction of the first note by the execution and delivery of the second, the foregoing conclusions require an affirmance of the judgment irrespective of other questions presented in appellant's brief.

However, we will proceed to discuss the other assignments upon the assumption, for sake of argument, that the trial court found an agreement between the makers and payees of the second note at the time of its execution that the same should be taken by the payees in full satisfaction and discharge of the first note.

It is insisted that as the first note was payable to the order of the payees and was by them hypothecated as collateral security only for a debt owing by the payees to appellee bank and was not indorsed by the payees, it was subject in appellee's hands to the defense of payment even though appellee acquired it in good faith and without notice; that the court erred in finding that, under the laws of Missouri, as proven upon the trial, appellee became the legal owner and holder thereof for value in due course of business; that there was error also in the findings with respect to the laws of Missouri and in the refusal of the court to render judgment in favor of appellant in view of the laws of Missouri proven upon the trial and shown in the statement of facts and the other facts found by the trial court.

[3, 4] It is well settled by the decision of this state that the holder by indorsement of negotiable paper acquired before maturity as collateral security for a pre-existing debt will be protected as an innocent purchaser, unless at the time he acquired it he had notice of defenses existing against it. See Alexander v. Bank of Lebanon, 19 Tex. Civ. App. 620, 47 S. W. 840, and decisions therein cited. This announcement is of the law merchant, and the decisions are not based upon any statute of our state. Upon a former appeal of this case our Supreme Court held that the note made the basis of the suit is, by its terms, a negotiable instrument, and upon the last trial no law of the state of Missouri was proven having a contrary effect. In the same decision, our Supreme Court said further: "Under our law it matters not how a negotiable note has been assigned. Though the transfer be not evidenced by writing it is placed upon the same footing as a transfer by indorsement. Word v. Elwood, 90 Tex. 130, 37 S. W. 414. If transferred without notice of any defenses as against the transferror, it is subject to none." This ruling was based upon the provisions of Sayles' Civil Statutes, art. 307, and in the case of Word v. Elwood, supra, after quoting this statute, the court said: "An instrument is 'assigned' within the meaning of this statute when it is transferred from one to another. The form of the transfer and whether written or verbal is immaterial."

But appellant offered in evidence excerpts from the decision of the Supreme Court of Missouri in the case of Loewen v. Forsee, 137 Mo. 29, 38 S. W. 712, 59 Am. St. Rep. 489, in which the court, following the decision in Goodman v. Simonds, 19 Mo. 107, held that: "Where a negotiable note is transferred mere-

ly as collateral security for pre-existing debt, no new consideration being given for it, the transferee takes it subject to all the equities existing between the original parties." In that case it seems that the note was indorsed to the holder and the court said further: "There are, however, many late decisions which hold that the transfer before maturity by indorsement in writing as in this case of a negotiable note as security for an antecedent debt merely, without more, makes the indorsee a bona fide holder unaffected by equities between the original parties of which he had no notice. R. R. v. Bank, 102 U. S. 14, 26 L. Ed. 61; Maitland v. Bank, 40 Md. 540, 17 Am. Rep. 620; Giovanovich v. Bank, 26 La. Ann. 15; Harrison v. Pike, 48 Miss. 46; Mix v. Bank, 91 Ill. 20, 33 Am. Rep. 44. Indeed, such seems to be in accord with the decided weight of authority. But the greater number of decisions of the appellate courts of this state, as well also, as the more recent decisions, are in accord with the rule announced in the Goodman Case, and that enunciation must be regarded as the settled law of this state."

[5] The portions of the decision in that case found in the statement of facts do not clearly show the facts upon which it was based, but it would seem that the controversy decided was between the holder by indorsement of a negotiable instrument as collateral security, and its maker. However, as the date of the decision is not shown in the statement of facts, and as the burden was upon appellant to prove the law of Missouri as it existed at the date appellee acquired the note in controversy in this case, that decision cannot be given effect even though it should be held otherwise applicable.

[6] Furthermore, as that decision does not purport to be based upon any statute of Missouri, but purports to announce merely a proposition of commercial law, we would not feel inclined to follow it in opposition to the decisions of our own state upon the same question, and in opposition to the decided weight of authority as admitted in the decision itself. Alexander v. Bank of Lebanon, supra.

Portions of the opinions in the cases of Boeka v. Nuella, 28 Mo. 180, Rice v. McFarland, 34 Mo. App. 404, Bartlett v. Eddy, 49 Mo. App. 32, by the Kansas City Court of Appeals, and Weber v. Orten, 91 Mo. 677, 4 S. W. 271, were also introduced in evidence. In all those decisions, except Bartlett v. Eddy, the rule was announced that a negotiable promissory note in the hands of an assignee transferred by delivery only and without indorsement, although in equity the property of the holder, is placed upon the same footing as a nonnegotiable instrument, and is subject to every defense which the maker had against it in the hands of the payee at the time of, or before notice of the transfer.

The suit in Rice v. McFarland, supra, was to foreclose a deed of trust on land, and the court said: "The case then can be stated in this way: On February 12, 1875, Stearns sold to defendant Morris 160 acres of land and took in payment therefor Morris' four negotiable notes of $450 each, the first falling due January 1, 1878, the others yearly thereafter, and all secured by a deed of trust on the land. On September 7, 1877, Stearns borrows of plaintiff $500, and as collateral security therefor transferred to plaintiff by delivery without indorsement the note in controversy, being the first one aforesaid. On November 11, 1878, Stearns repurchased the land from Morris, the consideration being Morris' four notes, including the one in controversy which he had originally given for it. On December 10, 1878, Stearns executed and placed on record a release of the deed of trust, declaring therein that all the notes had been paid. On February 10, 1881, Stearns sold and conveyed the land to McFarland. Plaintiff never notified defendant Morris that the note had been transferred to him by Stearns. Plaintiff asks for a personal judgment against Morris and that his lien be foreclosed on the land." The court then proceeded to hold that the note had been discharged as to Morris, and that he was not liable thereon, but that the land was not relieved of the deed of trust by sale to McFarland, and he could not avail himself of Morris' defense to the note.

Likewise, in the case of Bartlett v. Eddy, supra, the plaintiffs sought to enjoin Mrs. Eddy, the defendant, from foreclosing a deed of trust to secure a nonnegotiable note. The note was executed by Hall in favor of Craig in part payment for land upon which the deed of trust was given to secure its payment. By written instrument and before maturity of the note Craig assigned the note and deed of trust to Mrs. Eddy who paid value in good faith. Afterwards by quitclaim deed Hall reconveyed the land to Craig in consideration of the satisfaction by the payee of the note then held by Mrs. Eddy. Thereafter Craig sold the land to the plaintiffs who paid value therefor without notice of the fact that Mrs. Eddy held the note mentioned above. The court held that while Hall would have a valid defense as against any suit by plaintiff against him, yet that defense was not available to the plaintiffs. In that decision attention is called to the fact that Hall had reconveyed to Craig the land embraced in the deed of trust by quitclaim deed and hence in no event could be held liable to plaintiffs for their loss in being compelled to pay off the incumbrance. Although not necessary to the decision of the issues involved in that case, the court announced further, in effect, that if the facts had been such as to make Hall liable for the loss so sustained by plaintiffs then Hall's defense of payment would have been available to them.

[7] In the absence of the effect of regis-

tration statutes the right of priority as between a senior and junior mortgagee is subject peculiarly to the rules of equity jurisprudence and is not necessarily controlled by arbitrary rules of commercial law. A discharge of the debt, so far as the principal debtor is concerned, does not always operate as a discharge of the deed of trust given to secure its payment, as decided in Rice v. McFarland and Bartlett v. Eddy, supra.

[8] It is well settled that the lex situs governs when a chattel mortgage is executed in a state other than that in which the property is situated. Jones on Chattel Mortgages, § 305; Wharton on Conflict of Laws, § 317. As shown by the findings of fact in this case the mortgage held by appellee was duly recorded in Hemphill county, Tex., where the cattle were located when the mortgage was executed.

[9] Under the laws of this state the registration of that mortgage was constructive notice to appellant of appellee's rights under that mortgage. The first note was never in fact paid, and if it was never paid the first deed of trust was never actually discharged. Independent of its registry, that mortgage was superior to the second mortgage while the latter was in the hands of Ladd, Penney & Swazey. To hold that the equities in favor of appellant are superior to those in favor of appellee, and give to appellant a right superior to that possessed by its assignor and entitle appellant to a decree in equity subordinating the first mortgage to the second, would be to set at naught the force of the registration laws of this state, which we do not think can be done; aside from the further question for us to decide, whether or not independent of the fact of such registration, the second mortgage in the hands of appellant without notice before maturity and for value was subject to the equities existing against it in appellee's favor while it was held by Ladd, Penney & Swazey, the affirmative of which latter question has support in many respectable authorities. See 2 Pomeroy's Eq. Jur. §§ 688, 708, 714, 730, 733 and 734.

[10] Furthermore, if the law be as suggested in Bartlett v. Eddy, supra, that, in order to protect the maker, a subsequent purchaser or mortgagee can urge any defense to a prior incumbrance, the rejection of which would result in ultimate loss to the maker, yet we fail to see how that rule can be invoked by appellant in this case. As announced, the rule is for the protection of the maker of the note. The findings of fact show that in consideration for the services performed by Kenney in replevying the cattle from the sequestration levy and then delivering them to appellant, the second note was canceled and returned to the makers. It is thus shown that no possible loss could be sustained by the makers of the second note as a result of the rejection of the defense of payment urged by appellant to appellee's suit to foreclose the mortgage given to secure the first note; and, as the reason for the application of such rule does not exist in this case we do not think the rule should be given effect. If this conclusion be correct, then the decisions in Rice v. McFarland and Bartlett v. Eddy support the judgment in this case at all events.

For the reasons noted, the judgment is affirmed.